MICHELLE VISSER (SBN 277509)
mvisser@orrick.com
SARAH N. DAVIS (SBN 275145)
sdavis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

Attorneys for Defendant
Meta Platforms, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVELLE J. "JAY" BALLENTINE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>META PLATFORMS, INC., and<br>ACCENTURE LLP,<br><br>　　　　　Defendants. | Case No. 3:25-cv-7671-CRB<br><br>**DEFENDANT META PLATFORMS,<br>INC.'S NOTICE OF MOTION AND<br>MOTION TO DISMISS PLAINTIFF'S<br>FIRST AMENDED COMPLAINT<br>PURSUANT TO RULE 12(B)(6);<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES**<br><br>Date:　　　January 30, 2026<br>Time:　　　10:00 am<br>Judge:　　Hon. Charles R. Breyer<br>Dept:　　　Courtroom 6 – 17th Floor<br>　　　　　San Francisco |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on January 30, 2026 at 10:00 AM, or as soon thereafter as the matter may be heard, before the Honorable Charles R. Breyer, in Courtroom 6 on the 17th Floor located at 450 Golden Gate Avenue, San Francisco, CA  94102, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move to dismiss Plaintiff Marvelle J. "Jay" Ballentine's First Amended Complaint ("FAC").  Meta seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing with prejudice all of Plaintiff's causes of action against Meta in their entirety because Plaintiff's claims are barred by Section 230(c)(1) of the Communications Decency Act and Plaintiff has otherwise failed to state a claim upon which relief can be granted for each cause of action.

The motion is based on this motion, the memorandum of points and authorities below, the Declaration of Michael Duffey and the exhibits attached thereto, and the proposed order filed concurrently herewith.

Dated: October 31, 2025

ORRICK, HERINGTON & SUTCLIFFE LLP


By: */s/ Michelle Visser*
Michelle Visser

Attorneys for Defendant
Meta Platforms, Inc.

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 1

III.    LEGAL STANDARD .......................................................................................... 3

IV.     ARGUMENT ...................................................................................................... 3

        A.    Plaintiff's Claims Are Barred by Section 230 ............................................ 3

        B.    Plaintiff's Federal Civil Rights Claims Are Time-Barred ......................... 5

        C.    Each of Plaintiff's Claims Against Meta Fails as a Matter of Law ........... 7

              1.    Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981
                    (Counts I & II) ................................................................................ 7

              2.    Plaintiff Fails to State a Claim Under 42 U.S.C. § 1982
                    (Count III) ...................................................................................... 8

              3.    Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983
                    (Count IV) ...................................................................................... 9

              4.    Plaintiff Fails to State a Claim Under 42 U.S.C. §1985(3)
                    (Count V) ...................................................................................... 12

              5.    Plaintiff Fails to State a Claim Under the UCL (Count VI).......... 12

V.      PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND ................. 15

VI.     CONCLUSION ................................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Al-Ahmed v. Twitter Inc.*,
  603 F. Supp. 3d 857 (N.D. Cal. 2022) ................................................................ 6-7

6

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019) ............................................................... 13

7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................. 3

9

*Austin v. ABC Legal*,
  2022 WL 1606293 (N.D. Cal. May 20, 2022) ...................................................... 8

10

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) .............................................................................. 5

12

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001) .............................................................................................. 11

14

*Brown v. Bank of N.Y. Mellon Tr. Co, N.A.*,
  2023 WL 2558783 (C.D. Cal. Feb. 8, 2023) ........................................................ 6

15

*Brown v. City Nat'l Bank.*,
  2024 WL 201360 (N.D. Cal. Jan. 18, 2024)) ....................................................... 6

17

*Castronuova v. Meta Platforms, Inc.*,
  2025 WL 1914860 (N.D. Cal. June 10, 2025) ................................................... 3, 4

19

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
  590 F.3d 806 (9th Cir. 2010) ................................................................................ 9

20

*CBOCS West, Inc. v. Humphries*,
  553 U.S. 442 (2008) .............................................................................................. 9

22

*Children's Health Def. v. Meta Platforms, Inc.*,
  112 F.4th 742 (9th Cir. 2024) ............................................................................... 10

23

*Chinatown Neighborhood Ass'n v. Harris*,
  794 F.3d 1136 (9th Cir. 2015) .............................................................................. 15

26

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) .............................................................................. 14

27

*Davis v. Valon Mortg. Inc.*,
  2023 WL 4661789 (D. Ariz. July 20, 2023) ......................................................... 8

ii

*Earley v. GM, LLC*,
    2024 U.S. Dist. LEXIS 167704 (S.D. Cal. Sept. 17, 2024) ..................................... 13

*Elansari v. Meta, Inc.*,
    2024 WL 163080 (3d Cir. Jan. 16, 2024) .......................................................... 5

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008)................................................................. 3, 5

*Fed. Agency of News LLC v. Facebook, Inc.*,
    395 F. Supp. 3d 1295 (N.D. Cal. 2019) .......................................................... 4

*Fed. Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) .......................................................... 4

*Floyd v. Saber Fitness Hegenberger, LLC*,
    2024 WL 2971669 (N.D. Cal. June 11, 2024) ........................................ 5, 6, 7, 14

*Goodlow v. Estrada*,
    2025 WL 26811 (S.D. Cal. Jan. 22, 2025) ...................................................... 12

*Gray v. Apple Inc.*,
    2017 WL 1709327 (N.D. Cal. May 3, 2017) .................................................. 7, 8

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ......................................................... 14

*Haskell v. Fadem*,
    2025 WL 2482236 (N.D. Cal. Aug. 27, 2025).................................................... 6

*Hispanic Taco Vendors of Wash. v. City of Pasco*,
    994 F.2d 676 (9th Cir. 1993)................................................................... 11

*In re Intel Corp. Sec. Litig.*,
    2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) .................................................... 2

*Johnson v. Lucent Techs., Inc.*,
    653 F.3d 1000 (9th Cir. 2011)................................................................... 3

*Khoja v. Orexigen Therapeutics*,
    899 F.3d 988 (9th Cir. 2018)................................................................... 3

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016).................................................................. 15

*King v. Facebook, Inc.*,
    572 F. Supp. 3d 776 (N.D. Cal. 2021) .......................................................... 5

*Knight v. Wells Fargo Bank, N.A.*,
    459 F. Supp. 3d 1288 (N.D. Cal. 2019) .......................................................... 7

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ............................................................................ 13, 14, 15

*Loomer v. Zuckerberg*,
  2023 WL 6464133 (N.D. Cal. Sept. 30, 2023), *aff'd*, 2025 WL 927186 (9th
  Cir. Mar. 27, 2025) ....................................................................................... 4

*Lowenthal v. Wilshire Com. Props., LLC*,
  2025 WL 2406530 (C.D. Cal. June 20, 2025) .............................................. 12

*Lozano v. AT&T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007) ....................................................................... 14

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982) ...................................................................................... 9

*McKenzie v. City of Milpitas*,
  738 F. Supp. 1293 (N.D. Cal. 2024) .............................................................. 7

*McKnight v. Middleton*,
  699 F. Supp. 2d 507 (E.D.N.Y. 2010) ........................................................... 9

*Mir v. State Farm Auto. Ins. Co.*,
  2019 WL 8355841 (C.D. Cal. Sept. 19, 2019) ............................................... 8

*Moates v. Facebook Inc.*,
  2024 U.S. Dist. LEXIS 101440 (N.D. Cal. Apr. 3, 2024) ............................ 13

*Mueller v. Auker*,
  700 F.3d 1180 (9th Cir. 2012) ..................................................................... 11

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021) ............................................................................ 5

*Nayab v. Cap. One Bank (USA), N.A.*,
  942 F.3d 480 (9th Cir. 2019) ......................................................................... 3

*O'Handley v. Padilla*,
  579 F. Supp. 3d 1163 (N.D. Cal. 2022), *aff'd at* 62 F.4th 1145 (9th Cir. 2023) .................... 10

*O'Handley v. Weber*,
  62 F.4th 1145 (9th Cir. 2023) .............................................................. *passim*

*Pipitone v. Barksdale*,
  2025 WL 1420095 (C.D. Cal. Jan. 13, 2025) ............................................... 12

*In re Plum Baby Food Litig.*,
  2024 U.S. Dist. LEXIS 56920, 2024 WL 1354447 (N.D. Cal. Mar. 28, 2024) .................... 13

*Ray v. Am. Airlines, Inc*,
  755 F. Supp. 3d 1277 (C.D. Cal. 2024) ................................................................ 8

*Reaud v. Facebook, Inc.*,
  2024 WL 4126066 (N.D. Cal. Sept. 9, 2024) ...................................................... 15

*Rivera v. Peri & Sons Farms, Inc.*,
  735 F.3d 892 (9th Cir. 2013) ................................................................................. 5

*United States v. Rosenow*,
  50 F.4th 715 (9th Cir. 2022) ......................................................................... 10, 11

*Scott v. Ross*,
  140 F.3d 1275 (9th Cir. 1998) ............................................................................. 12

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
  144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd* 697 F. App'x 526 (9th Cir. 2017) .................. 5

*Smith v. LG Elecs. U.S.A., Inc.*,
  2014 WL 989742 (N.D. Cal. March 11, 2014) ..................................................... 14

*Smith v. Substack, Inc.*,
  2024 WL 3757501 (N.D. Cal. Aug. 12, 2024) ....................................................... 4

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
  2005 U.S. Dist. LEXIS 4875 (N.D. Cal. Mar. 21, 2005) ...................................... 6

*Zamorano v. City of San Jacinto*,
  2012 WL 12886821 (C.D. Cal. Oct. 22, 2012) ..................................................... 6

**Statutes**

18 U.S.C. § 2258A ...................................................................................................... 11

42 U.S.C. § 1981 ............................................................................................... 3, 6, 7, 8

42 U.S.C. § 1982 ..................................................................................................... 3, 8

42 U.S.C. § 1983 ............................................................................................. 1, 3, 9, 11

42 U.S.C. § 1985 ........................................................................................... 1, 3, 11, 12

47 U.S.C. § 230 ...................................................................................................... 3-5

Cal. Bus. & Prof. Code § 17200 ............................................................................. 12

Cal. Civ. Proc. Code §335.1 ...................................................................................... 6

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

This case arises out of Meta Platforms, Inc.'s ("Meta") policy against "Child Sexual Exploitation" ("CSE"), whereby Meta prohibits content that exploits or endangers children. Pro se Plaintiff Marvelle J. "Jay" Ballentine brings this suit against Meta and Accenture because Meta allegedly terminated Plaintiff's Facebook account pursuant to Meta's CSE policy, and Accenture allegedly affirmed the termination. Based solely on his allegations that Accenture was aware that Plaintiff was Black when it upheld the termination and that, in a handful of other CSE enforcement cases (out of millions), Accenture allegedly reversed the initial determinations for white users, Plaintiff summarily accuses Meta of terminating his account based on his race and asserts claims under several federal civil rights statutes and the California Unfair Competition Law ("UCL").

Plaintiff's claims against Meta, however, are barred by Section 230(c)(1) of the Communications Decency Act ("Section 230"), which bars claims against interactive computer service providers based on the removal of content, including user accounts, from their services. Plaintiff's claims against Meta are also insufficiently pled under Rule 12(b)(6), for multiple, independent reasons. *First*, his federal claims are time-barred on the face of the FAC. *Second*, his federal claims all fail because Plaintiff fails to plead any facts showing that Meta engaged in intentional racial discrimination. *Third*, Plaintiff's 42 U.S.C. §1983 claim independently fails because Meta is not a state actor, and Plaintiff fails to plead facts that would justify treating Meta as a state actor. *Fourth*, Plaintiff's conspiracy claim under 42 U.S.C. §1985 fails because it is derivative of his other failed claims and because Plaintiff does not plead any facts showing that Meta and Accenture conspired to racially discriminate against him. *Finally*, Plaintiff fails to plausibly allege that Meta's conduct was "unlawful," "unfair," or "fraudulent" under the UCL.

## II.    BACKGROUND

<u>**Meta's CSE Policy:**</u> Meta operates Facebook, a service that enables users to create accounts to connect, share, discover, and communicate with friends, family, and communities on mobile devices and personal computers. All users of Facebook must agree to Meta's Terms of Service, which in turn require users to follow Meta's Community Standards. The Community Standards

outline what is and is not allowed on Meta services, including Facebook, and the Community Standards incorporate the CSE policy. Meta's CSE policy generally prohibits "content or activity that sexually exploits or endangers children" on Meta's services.[1] Decl. of Michael Duffey, Ex. A. As stated in Meta's policy, "[w]hen [Meta] becomes aware of apparent child exploitation"—a subset of the content and activity prohibited by Meta's policy—Meta "report[s] it to the National Center for Missing and Exploited Children ("NCMEC"), in compliance with applicable law." *Id.* As also explained in Meta's CSE policy, Meta prohibits and removes content beyond its statutory reporting requirements to NCMEC. For example, Meta may remove content under its CSE policy when "people share nude images of their own children with good intentions." *Id.*

**Plaintiff's Allegations:** Plaintiff alleges that he is a "Black business owner" who "operated [a] mobile RV repair business." FAC. ¶ 23. According to Plaintiff, in June 2022 he began using Facebook for advertising purposes for his RV repair business. *Id.* ¶ 48. Plaintiff contends that he first posted advertisements for his business between June 27-30, 2022. *Id.* ¶ 48.

Several days later, on July 4, 2022, Meta allegedly terminated his Facebook account, "invok[ing] its CSE policy." *Id.* ¶¶ 49; 51-52. Plaintiff alleges that he appealed his termination for the CSE violation, but a human reviewer from Accenture (Meta's service provider) affirmed the ban after they received a copy of Plaintiff's U.S. passport, which included his photo. *Id.* ¶¶ 39; 51.

Plaintiff also alleges that in 2022, when Meta is alleged to have terminated his account under its CSE policy, "Meta actioned approximately ***105.9 million items*** under its [CSE] enforcement category[,]" including 92.2 million on Facebook alone. FAC. ¶ 29 (emphasis added). Plaintiff further alleges that out of 105.9 million actions, 8,100 were reversed on appeal through review, and five (5) of those reversals involved white Facebook users. *Id.* ¶¶ 62-63, 84, 99.

Based on these allegations, Plaintiff summarily asserts that Meta terminated his account "because of Plaintiff's race," FAC. ¶ 147, and brings claims under 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and the UCL.

**Procedural History:** Plaintiff filed his original Complaint September 9, 2025, Meta and

---

[1] Meta's CSE policy is incorporated by reference in the Complaint and is, therefore, properly considered here. *See* Request for Judicial Notice (filed concurrently herewith); *In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *6 (N.D. Cal. Mar. 29, 2019).

1  Accenture each moved to dismiss Plaintiff's complaint on October 15 and 16, 2025, and Plaintiff

2  filed the FAC in response on October 17, 2025, raising the same causes of action against Meta as

3  the original complaint.  *See* ECF Nos. 1, 30, 33, 34.

4  **III.    LEGAL STANDARD**

5          To survive a motion to dismiss under Rule 12(b)(6), a complaint must include "sufficient

6  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Nayab v.*

7  *Cap. One Bank (USA), N.A.*, 942 F.3d 480, 495-96 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556

8  U.S. 662, 678 (2009)). "The plausibility standard . . . asks for more than a sheer possibility that a

9  defendant has acted unlawfully." *Id.* at 496. Although well-pleaded factual allegations are assumed

10 to be true, "[t]he court [is not] required to accept as true allegations that are merely conclusory,

11 unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics*, 899

12 F.3d 988, 1008 (9th Cir. 2018). And while pro se pleadings are construed "liberally," a pro se

13 plaintiff must still allege "factual matter" sufficient "to state a claim to relief that is plausible on its

14 face." *Johnson v. Lucent Techs.*, *Inc.*, 653 F.3d 1000, 1010-11 (9th Cir. 2011).

15 **IV.    ARGUMENT**

16         **A.    Plaintiff's Claims Are Barred By Section 230**

17         Plaintiff's FAC fails because it is barred in its entirety by Section 230(c)(1) of the

18 Communications Decency Act ("CDA"), 47 U.S.C. § 230. Section 230(c)(1) states that "[n]o

19 provider . . . of an interactive computer service shall be treated as the publisher or speaker of any

20 information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section

21 230(e)(3) further states that "[n]o cause of action may be brought and no liability may be imposed

22 under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). The Ninth

23 Circuit has accordingly held that, under Section 230(c)(1), an interactive computer service provider

24 like Meta cannot be held liable for removing content published on its services by a third party. *See*

25 *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th

26 Cir. 2008) ("[A]ny activity that can be boiled down to deciding whether to exclude material that

27 third parties seek to post online is perforce immune under section 230."). And where it is apparent

28 that Section 230(c)(1) applies on the face of the pleading, claims are properly disposed of at the

META PLATFORMS' MOT. TO DISMISS FIRST
AM. COMPL. NO. 3:25-CV-7671-CRB

motion to dismiss stage. *See, e.g., Castronuova v. Meta Platforms, Inc.*, 2025 WL 1914860, at *1 (N.D. Cal. June 10, 2025); *Smith v. Substack, Inc.*, 2024 WL 3757501, at *5 (N.D. Cal. Aug. 12, 2024) (dismissing claims under Section 230(c)(1) at the pleading stage).

Under Section 230, a claim should be dismissed if (1) the defendant is a "provider … of an interactive computer service[;]" (2) the content at issue was "provided by another information content provider[;]" and (3) the plaintiff's claims treat the defendant as the "publisher or speaker" of that content.  47 U.S.C. § 230(c)(1). All three conditions are satisfied here.

> a. *Meta Is An Interactive Computer Service Provider*

Courts have uniformly held that Meta, which provides interactive services like Facebook, is an interactive computer service provider. *See, e.g., Loomer v. Zuckerberg*, 2023 WL 6464133, at *12 (N.D. Cal. Sept. 30, 2023), *aff'd*, 2025 WL 927186 (9th Cir. Mar. 27, 2025) (Meta qualifies as an interactive computer service provider); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020) ("Facebook is unquestionably an interactive computer service."). Accordingly, the first Section 230 requirement is satisfied.

> b. *The Content at Issue Was Provided by Plaintiff Himself, Not Meta*

Section 230(c)(1)'s second requirement is also met because the content at issue was provided by an "information content provider" other than Meta—namely, by Plaintiff himself. *See* 47 U.S.C. § 230(c)(1). This inquiry is simple where, as here, the "complaint admits that [the plaintiff] is the source of the information that [Meta] removed" while "nowhere alleg[ing] that [Meta] provided, created, or developed any portion" of the content. *Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1305–06 (N.D. Cal. 2019); *see e.g.,* FAC. ¶ 48 ("Plaintiff began marketing his RV repair business on Facebook"). Here, Plaintiff's claims all stem from the alleged termination of his Facebook account, and he does not allege Meta played any role in developing the content at issue, so the second Section 230 requirement is satisfied.

> c. *The Complaint Seeks to Hold Meta Liable for Its Purported Exercise of a Publisher's Traditional Editorial Function*

Section 230(c)(1)'s final requirement is met because Plaintiff's allegations seek to treat Meta as a "publisher" of third-party content. Under Section 230(c)(1), a claim treats a defendant as a "publisher" if it seeks to hold the defendant liable for its purported exercise of traditional

"editorial functions"—such as deciding "whether to publish, withdraw, postpone or alter content created by third parties." *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 17 (2021). "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council*, 521 F.3d at 1170-71. What matters here is not the "name of the cause of action," but "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, [S]ection 230(c)(1) precludes liability." *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015), *aff'd* 697 F. App'x 526 (9th Cir. 2017) (holding that "removing content is something publishers do" and that Section 230 barred a discrimination claim) (internal quotations omitted).

Here, all of Plaintiff's claims arise out of Meta's alleged termination of Plaintiff's Facebook account, which is "precisely the kind of activity for which [S]ection 230 was meant to provide immunity." *Fair Hous. Council*, 521 F.3d at 1170. Courts in this district and beyond have routinely dismissed claims, such as those here, premised on a defendant's decision to suspend or terminate a user's account, restricting their ability to post or otherwise access their account. *See, e.g., King*, 572 F. Supp. 3d at 795 (holding that "Facebook has CDA immunity. . . to the extent that [plaintiff's] claim is based on Facebook's disabling of [plaintiff's] account"); *Elansari v. Meta, Inc.*, 2024 WL 163080, at *1-2 (3d Cir. Jan. 16, 2024) (recognizing that Section 230 bars claims under 42 U.S.C. §1981 alleging that Meta disabled accounts for racially discriminatory reasons).

Accordingly, all three requirements of Section 230 are met, and Plaintiff's claims should be dismissed in their entirety with prejudice.

### B.    Plaintiff's Federal Civil Rights Claims are Time-Barred

Plaintiff's federal civil rights causes of action (Counts 1-5) fail for the additional reason that they are time-barred. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (holding that affirmative defenses apparent on the face of a complaint can be raised in a motion to dismiss). For federal civil rights claims under the statutes Plaintiff invokes, courts apply the forum state's statute of limitations ("SOL") for personal injury actions. *See Floyd v. Saber Fitness*

*Hegenberger, LLC*, 2024 WL 2971669, at *5 (N.D. Cal. June 11, 2024) ("claims under 42 U.S.C. §§ 1981 and 1983 [are] governed by the forum state's SOL for personal injury actions"); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 2005 U.S. Dist. LEXIS 4875, at *7 (N.D. Cal. Mar. 21, 2005) (Section 1981 claim related to contract formation was governed by forum state's personal injury SOL); *Brown v. Bank of N.Y. Mellon Tr. Co, N.A.*, 2023 WL 2558783, at *6 (C.D. Cal. Feb. 8, 2023) (Section 1982 claim was governed by California's SOL for personal injury actions); *Haskell v. Fadem*, 2025 WL 2482236, at *5 (N.D. Cal. Aug. 27, 2025) (same for Section 1985(3) claims). In California, the SOL for personal injury actions is two years. *See* Cal. Civ. Proc. Code §335.1. And, for civil rights claims, the cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Floyd*, 2024 WL 2971669, at *5.

Here, Plaintiff's causes of action accrued when Meta allegedly permanently disabled his Facebook account on July 4, 2022, and thus, all his federal civil rights claims are untimely because Plaintiff did not file his complaint until over three years after that event, on September 9, 2025. FAC ¶ 108; *Al-Ahmed v. Twitter Inc.*, 603 F. Supp. 3d 857, 878-79 (N.D. Cal. 2022) (finding that claims based on account suspension accrued on the data that the account was suspended).

Plaintiff's allegation that he did not learn that "white users subject to the same CSE policy. . . received different enforcement review outcomes" until 2024 and 2025 is immaterial, FAC ¶87, because civil rights claims accrue 'upon awareness of the actual injury. . . and not when the plaintiff suspects a legal wrong.'" *Brown v. City Nat'l Bank*, 2024 WL 201360, at *4 (N.D. Cal. Jan. 18, 2024) (quoting *Lukovsky v. City and Cnty. of San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008)). Here, Plaintiff alleges he was aware of the alleged injury (the disablement of his account) on July 4, 2022. His claims therefore accrued on that date, regardless of when Plaintiff may have first suspected a discriminatory motive. *See id.* (holding that plaintiff's Civil Rights Act claims accrued when "CNB denied [plaintiff's] loan application" because "[a]t that point, [plaintiff] knew that she had been injured and by whom, even if she did not suspect discriminatory motive underlying the loan denial"); *see also Zamorano v. City of San Jacinto*, 2012 WL 12886821, at *4 (C.D. Cal. Oct. 22, 2012) ("Whether Plaintiffs were aware of the discriminatory animus at the time of the adverse action is not the appropriate question; the pertinent inquiry is when Plaintiffs were aware of an

1    adverse action.").  Accordingly, Plaintiffs federal claims are time-barred.[2]

2        **C.**    **Each of Plaintiff's Claims Against Meta Fails as a Matter of Law**

3            1.    **Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981 (Counts I & II)**

4        To state a claim under §1981, a plaintiff must "allege (1) he is a member of a protected

5    class, (2) he attempted to contract for certain services, and (3) he was denied … the right to make

6    or enforce a contract." *Knight v. Wells Fargo Bank, N.A.*, 459 F. Supp. 3d 1288, 1291 (N.D. Cal.

7    2019). "Because claims brought under § 1981 are grounded in the Equal Protection Clause of the

8    Fourteenth Amendment, an 'essential element' of a valid § 1981 action is that the defendant 'acted

9    with the intent to discriminate on the basis of race.'" *Floyd*, 2024 WL 2971669, at *7 (quoting

10    *McKenzie v. City of Milpitas*, 738 F. Supp. 1293, 1301 (N.D. Cal. 2024)). "Thus, to establish a

11    claim under § 1981, the plaintiff must show overt acts by the defendant, 'coupled with some direct

12    evidence that the defendant's conduct was motivated by racial animus.'" *Id.* "Mere conclusory

13    allegations of intentional discrimination will not suffice." *Gray v. Apple Inc.*, 2017 WL 1709327,

14    at *3 (N.D. Cal. May 3, 2017).

15        Plaintiff fails to sufficiently plead either § 1981 claim because he does not plead *any* facts

16    that plausibly support his assertion that Meta disabled Plaintiff's Facebook account because of his

17    race.  To the contrary, Plaintiff merely alleges that (i) when an Accenture reviewer upheld the

18    account disablement after Plaintiff appealed, the reviewer was able to see Plaintiff's profile picture

19    and his government-issued identification, FAC ¶ 115, and (ii) Meta restored accounts for a handful

20    of "white users flagged under the same policy." *Id.* ¶ 117.[3]

21    _____

[2] Plaintiff's allegation that he "attempted to create a new Facebook account" in April 2023, but

22    that account was "promptly terminated" does not change the result.  FAC ¶85.  Even if Plaintiff's

      federal claims were premised on the alleged April 2023 account termination—they are not—they

23    would still be time barred, because his Complaint was not filed until September 2025. Further,

      Plaintiff cannot establish a "continuing violation" based on his alleged "written reinstatement

24    demand" to Meta in 2025, because that demand was based on the alleged account disablement

      that occurred in July 2022 and all of Plaintiffs' claims are ultimately based on that disablement.

25    FAC ¶ 89; *see also Al-Ahmed*, 603 F. Supp. 3d at 878 ("The continued suspension of [plaintiff's]

      Twitter] account does not constitute a separate act, and "[w]ithout separate wrongful acts to

26    trigger the statute of limitations, continuous accrual does not apply.").

      [3] Elsewhere in his Complaint Plaintiff attempts to fault Meta for commissioning a Civil Rights

27    Audit and a survey where the results allegedly suggested that Meta's automated content moderation

      tools "could exacerbate racial inequities" and "were better at detecting hate speech against white

28    people [than] people of color." FAC ¶¶ 42-43. At most, these allegations show that Meta was

      actively trying to detect and address potential racial inequalities.

But the mere fact that Accenture (or Meta) had access to Plaintiff's photos and thus arguably had constructive notice that Plaintiff is Black does nothing to establish that Meta was motivated by race when it terminated his Facebook account pursuant to its CSE policy. *See Mir v. State Farm Auto. Ins. Co.*, 2019 WL 8355841, at *2 (C.D. Cal. Sept. 19, 2019) ("Mere knowledge of Plaintiff's ethnicity coupled with a conclusory assertion of discriminatory animus for Defendant's action does not create a plausible inference necessary" for §1981 claim "to survive a 12(b)(6) motion"); *Austin v. ABC Legal*, 2022 WL 1606293, at *1, 3 (N.D. Cal. May 20, 2022) (dismissing §1981 claim because allegations that defendant "knew plaintiff was a black man due to. . . Pictures (for ID verification) . . . and via self-identification" were insufficient to show discriminatory intent).

Similarly, Plaintiff's allegation that—out of over 105.9 million CSE actions and over 8,100 reversals, FAC ¶¶ 29, 62—there exist a handful of white users whose Facebook accounts were restored after being flagged under the CSE policy does not raise a plausible inference of any type of discrimination, much less the intentional discrimination that section 1981 claims require. *See Gray*, 2017 WL 1709327, at *3 (holding that allegations that "a white customer" successfully completed the same transaction Plaintiff attempted "during the same time" did not suffice to support a § 1981 claim); *Davis v. Valon Mortg. Inc.*, 2023 WL 4661789, at *3 (D. Ariz. July 20, 2023) (holding plaintiff failed to sufficiently plead race discrimination where he was allegedly required to interview for a lateral position and a white woman was not).

Because Plaintiff has failed to plead *any facts* supporting a plausible inference that Meta intentionally discriminated against him, both of his §1981 claims against Meta must be dismissed. *See Ray v. Am. Airlines, Inc*, 755 F. Supp. 3d 1277, 1281 (C.D. Cal. 2024) (dismissing claims because "[t]he mere intersection of Plaintiff's race and his alleged mistreatment by a defendant. . . is not enough to nudge plaintiff's claim of racial discrimination across the line from conceivable to plausible") (internal quotations omitted).

### 2.    Plaintiff Fails to State a Claim Under 42 U.S.C. § 1982 (Count III)

Plaintiff's § 1982 claim fails for the same reasons as his § 1981 claims—Plaintiff fails to plead any facts that raise a plausible inference of intentional discrimination. "To state a claim under. . . § 1982, Plaintiff must allege facts that support the following three elements: (1) he is a member

of a racial minority; (2) an intent to discriminate on the basis of his race by defendant; and (3) the discrimination concerned one or more activities enumerated in … Section … 1982." *McKnight v. Middleton*, 699 F. Supp. 2d 507, 529 (E.D.N.Y. 2010). Because both statutory claims require proof of intentional discrimination, courts analyze claims of racial discrimination under § 1982 and §1981 under the same framework. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 447 (2008).

Here, Plaintiff's § 1982 claim is based on the same underlying conduct as his § 1981 claim– the alleged disablement of his account based on a CSE violation. *Compare* FAC. ¶¶ 110-132 *with id.* ¶¶133-142. Thus, Plaintiff fails to plausibly allege intentional racial discrimination for the same reasons, and his § 1982 should similarly be dismissed. *See supra* at 7.

### 3.    Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983 (Count IV)

Plaintiff's § 1983 claim fails because Meta is a private company, not a state actor. "In order to recover under § 1983. . . a plaintiff must show 'that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.'" *Caviness v. Horizon Cmty. Learning Ctr.*, *Inc.*, 590 F.3d 806, 812 (9th Cir. 2010). Accordingly, "§ 1983 excludes from its reach merely private conduct" unless "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* Only in "exceptional cases" will a private entity "be treated as a state actor for constitutional purposes[.]" *O'Handley v. Weber*, 62 F.4th 1145, 1155-56 (9th Cir. 2023). While the state action doctrine can be complex, its application here is not. Here, Plaintiff argues that Meta can be treated as a state actor in connection with the alleged termination of Plaintiff's account because (i) Meta allegedly reports some CSE violations to law enforcement and/or NCMEC and (ii) when it so reports, Meta is acting pursuant to a statutory requirement. *See* FAC. ¶¶ 143-150. Not so.

The Ninth Circuit analyzes state action under the two-step framework developed in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). *O'Handley*, 62 F.4th at 1156. Under this framework, the first question is whether the alleged constitutional violation was caused by the "exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id.* (quoting *Lugar*, 457 U.S. at 937). If the first step is satisfied the next question is whether "the party charged with the deprivation [is] a person who may

fairly be said to be a state actor." *Id.* (quoting *Lugar*, 457 U.S. at 937).

Here, Plaintiff's claim fails at the first step: Meta "did not exercise a state-created right when it … suspended his account." *O'Handley*, 62 F.4th at 1156. While this alone is fatal to his claim, Plaintiff also fails the second step.

Courts apply four tests to determine whether a private company like Meta may fairly be said to be a state actor: "(1) the public function test, (2) the state compulsion test, (3) the nexus test, and (4) the joint action test." *O'Handley*, 62 F.4th at 1157. Here, Plaintiff appears to base his claim on the joint action, nexus and state compulsion tests, but he fails to adequately plead any of them.

<u>Joint action</u> exists only where the government has "so far insinuated itself into a position of interdependence with a private entity that [it] must be recognized as a joint participant in the challenged activity." *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 755-56 (9th Cir. 2024) (citations omitted). And "specificity" is required: "[I]t is not enough to show an agreement to do something; the private party and the government must also have agreed on what the something is." *Id.* Plaintiff does not plead any such interdependence. To the contrary, Plaintiff alleges that Meta and Accenture decide whether content violates the CSE policy and nowhere alleges government involvement in those decisions. FAC ¶ 74. Plaintiff's only allegation purporting to support "joint action" is that *if* "Meta submitted a [CyberTipline] report [for Plaintiff], NCMEC disseminated it to Florida law enforcement under § 2258A(g)(3), triggering state investigative processes and making [Meta] and state agencies joint actors." *Id.* ¶ 78; *see also id.* ¶ 146 (similar). But, in his FAC, Plaintiff now affirmatively alleges that Meta did *not* submit a report to NCMEC regarding him. In any event, whether Meta made a report is not even tied to the alleged wrong—the account termination—making it irrelevant as well as insufficient to show joint action. *See O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1181 (N.D. Cal. 2022) ("One party supplying information to another party does not amount to joint action."), *aff'd* at 62 F.4th 1145 (9th Cir. 2023); *see also United States v. Rosenow*, 50 F.4th 715, 730, 733 (9th Cir. 2022) ("Our caselaw is clear that a private actor does not become a government agent simply by complying with a mandatory reporting statute," noting that "the record establishes that" Facebook has "legitimate, independent motivations" for investigating and reporting child sexual material on its platform).

Plaintiff also fails to sufficiently plead facts to satisfy the <u>nexus test</u>. While there are two different versions of the nexus test, Plaintiff attempts to plead only the first formulation, which "asks whether there is 'pervasive entwinement of public institutions and public officials [in the private actor's] composition and workings.'" *O'Handley*, 62 F.4th at 1157 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001)). But Plaintiff's allegation that Meta's "CSE enforcement. . . [is] pervasively entwined with law-enforcement-facing functions such that the state is responsible for the decision" is entirely unsupported and contradicted by his other pled facts, including the fact that Meta is obligated to make such reports based on specified statutory criteria. FAC ¶ 144. Again, Plaintiff's core allegation is that Meta disabled his account without justification. He does not allege that any public official played any role in that disablement. Moreover, in evaluating whether there is "pervasive entwinement," courts "look to factors such as whether the private organization relies on public funding, whether it is composed mainly of public officials, and whether those public officials 'dominate decision making of the organization.'" *O'Handley*, 62 F.4th at 1157. Meta "lacks all of those attributes." *Id.*

Plaintiff does not fare any better under the <u>state compulsion test</u>. Contrary to Plaintiff's arguments, compliance with a statutorily mandated reporting regime cannot make a party a state actor for purposes of §1983. *See Mueller v. Auker*, 700 F.3d 1180, 1191-92 (9th Cir. 2012) (holding that hospital "did not become a state actor simply because it complied with state law requiring its personnel to report possible child neglect to Child Protective Services"). Notably, the Ninth Circuit has already recognized, for Fourth Amendment purposes, that Facebook's compliance with the NCMEC reporting statute does not convert it into a state actor. *See Rosenow*, 50 F.4th at 730 (recognizing that compliance with mandatory reporting to NCMEC under 18 U.S.C. § 2258A does not transform a private party into a state actor).

Plaintiff's §1983 claim fails for the separate and independent reason that he fails to plead a violation of the Equal Protection Clause. Like his other statutory claims, claims under the Equal Protection Clause "require[] a showing of discriminatory intent." *Hispanic Taco Vendors of Wash. v. City of Pasco*, 994 F.2d 676, 679 n.3 (9th Cir. 1993). Accordingly, Plaintiff's reliance on conclusory allegations of intentional racial discrimination, *see supra* at 7-8, is also fatal to

establishing a claim under the Equal Protection Clause. *See Goodlow v. Estrada*, 2025 WL 26811, at \*4 (S.D. Cal. Jan. 22, 2025) (holding that plaintiff's "conclusory allegations do not plausibly state an equal protection claim" because he "fails to provide specific factual allegations to show how" each defendant "acted with discriminatory intent").

### 4.    Plaintiff Fails to State a Claim Under 42 U.S.C. §1985(3) (Count V)

To state a claim under Section 1985(3), Plaintiff must establish (1) a conspiracy (2) to deprive the plaintiff of the equal protection of the laws (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in their person or property or deprived of any right or privilege of a citizen of the United States. *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998). Plaintiff's conspiracy claim fails for two independent reasons.

*First*, Plaintiff's §1985(3) claim fails because it is derivative of his §§ 1981, 1982, and 1983 claims and, as shown above, he fails to state a claim under any of those statutes. *See Pipitone v. Barksdale*, 2025 WL 1420095, at \*3 (C.D. Cal. Jan. 13, 2025) (dismissing derivative claims finding "[s]ection 1985(3) provides no substantive rights itself"").

*Second*, his §1985(3) claim fails for the independent reason that Plaintiff does not allege facts showing a "meeting of the minds" regarding a specific agreement to engage in discriminatory conduct. *O'Handley*, 62 F. 4th at 1159 (holding that §1985(3) claim fails where plaintiff fails "to show a 'meeting of the minds'. . . to violate constitutional rights."). To the contrary, Plaintiff pleads an ordinary business relationship between Meta and Accenture, *see* FAC ¶¶ 102-107, which falls woefully short of showing that they agreed to discriminate based on race in making content moderation decisions. *See Lowenthal v. Wilshire Com. Props., LLC*, 2025 WL 2406530, at \*6 (C.D. Cal. June 20, 2025) (dismissing § 1985(3) claim where "[p]laintiff does not allege any facts demonstrating that any specific defendant, motiv[ated] by invidious animus, conspired to interfere with Plaintiff's civil rights").

### 5.    Plaintiff Fails to State a Claim Under the UCL (Count VI)

Plaintiff likewise fails to state a claim under any prong of the UCL. The UCL bars any "business act or practice" that is (1) unlawful, (2) fraudulent, or (3) unfair. Cal. Bus. & Prof. Code § 17200. Plaintiff fails to state a claim under any of the three theories.

*First*, Plaintiff's claim under the unlawful prong of the UCL fails because it is derivative of his other claims, which are all insufficiently pled. FAC ¶ 165; *Moates v. Facebook Inc.*, 2024 U.S. Dist. LEXIS 101440, at *7 (N.D. Cal. Apr. 3, 2024) ("[B]ecause [p]laintiff has failed to allege a predicate violation of any law, the UCL claim also fails under the unlawful prong").

*Second*, Plaintiff fails to state a claim under the fraudulent prong, which must be pled with particularity, for multiple reasons. Plaintiff's theory is that Meta engaged in fraudulent conduct when it purportedly "misrepresent[ed] CSE designations as legitimate child safety violations when applying them pretextually to terminate users." At the outset, as discussed above, Plaintiff fails to plead facts showing that Meta's termination of his account was pretextual. For this alone, his claim under the fraudulent prong fails. *See Earley v. GM, LLC*, 2024 U.S. Dist. LEXIS 167704, at *20 (S.D. Cal. Sept. 17, 2024) (dismissing claim under fraudulent prong of the UCL where the plaintiff failed to sufficiently plead that that alleged statement was false or fraudulent); *see supra* at 7-8. In addition, Plaintiff's claim fails because he does not allege that he relied on Meta's alleged stated reason for his account's termination, or that he lost money or property as a result. *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011). Even accepting for purposes of this motion Plaintiff's assertion that Meta and Accenture got it wrong, he nowhere alleges that *he* was misled to believe he had posted CSE material, much less that he relied on that statement to his detriment. Instead, Plaintiff alleges throughout his Complaint that he always disputed the determination. Nor can Plaintiff base his claim on his conclusory assertion that other users may have been misled. *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1156 (N.D. Cal. 2019) ("[C]ourts have recognized that UCL fraud plaintiffs must allege their own reliance—not the reliance of third parties—to have standing under the UCL") (internal quotations omitted).

*Third*, Plaintiff's unfair claim fails along with the claims asserted under the unlawful and fraudulent prongs. Courts in this district are clear that "where, as here, the conduct that comprises the UCL fraudulent or unlawful prongs is the same conduct as the unfair prong, 'the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive.'" *Moates*, 2024 U.S. Dist. LEXIS 101440, at *8 (quoting *In re Plum Baby Food Litig.*, 2024 U.S. Dist. LEXIS 56920, 2024 WL 1354447, at *7 (N.D. Cal. Mar. 28, 2024)); *see also Hadley v.*

1    *Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017)) (same). Such is the case here.

2    Plaintiff's unfair claim also fails on its face because he fails to plead facts demonstrating

3    that Meta's alleged termination of his account pursuant to its CSE policy was unfair in any way.

4    To determine if conduct is "unfair" for the purposes of the UCL, courts generally apply (1) a public-

5    policy test that asks whether the practice violates a legislatively-declared policy [tethering test], or

6    (2) a balancing test that asks whether the harm to victims outweighs any benefit. *See Lozano v.*

7    *AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) (synthesizing California law).[4] Here,

8    Plaintiff proffers four purportedly "unfair" practices but none can plausibly be construed as unfair

9    under either test.

10    To start, Plaintiff's apparent allegation that Meta committed an unfair act by *not* reporting

11    him to law enforcement is nonsensical and not actionable because Plaintiff fails to plead any loss

12    of money or property that resulted from Meta allegedly not reporting his violation to NCMEC. *See*

13    *Kwikset Corp.* 51 Cal. 4th at 322 ("[A] party must … show that [their alleged] economic injury was

14    the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen

15    of the claim."). Plaintiff also fails to plead any facts showing that Meta's alleged practice of

16    reporting some but not all CSE policy violations to NCMEC could be considered unfair under either

17    test. Plaintiff does not identify any legislatively-declared policy that the practice allegedly violates;

18    nor does he plead any facts showing it causes any harm, much less sufficient harm to outweigh any

19    benefit. *See Floyd*, 2024 WL 2971669, at *11 (dismissing UCL claim where complaint alleged "no

20    more than 'a bare assertion' that the business practice, whatever it may be, is unfair").[5]

21    Plaintiff's contention that Meta's alleged practice of permitting final reviewers to view user

22    identification documents that may reveal the user's race while making disablement decisions is an

23    "unfair practice" fails for the same reasons. Plaintiff does not identify any legislative policy

24    ─────────────
[4] Under the tethering test, any finding of unfairness must be "tethered to some legislatively declared

25    policy or proof of some actual or threatened impact on competition." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012). Under the balancing test, courts evaluate "whether the

26    business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers' and 'requires the court to weigh the utility of the defendant's conduct against the

27    gravity of the harm to the alleged victim.'" *Smith v. LG Elecs. U.S.A., Inc.*, 2014 WL 989742, at *9 (N.D. Cal. March 11, 2014).

28    [5] Nor could Plaintiff plead any such facts—it is plain from the face of the policy that not all material that constitutes a CSE violation should be reported to NCMEC.

requiring Meta to make appeal determinations without first verifying the user is who they say they are. *See* FAC ¶ 166. Nor, as shown above, does Plaintiff plead that any harm occurred as a result of final reviewers being permitted to view such information—Plaintiff's allegations of alleged race discrimination are entirely conclusory and do not suffice to state a claim. *See supra* at 7-8.  For the same reason, Plaintiff fails to show that he lost any money or property as a result of this alleged practice as opposed to a CSE policy violation determination. *See Kwikset Corp.*, 51 Cal. 4th at 322.

Likewise, Plaintiff's third and fourth alleged unfair practices—purportedly withholding users' business property after disablement; and maintaining practices despite alleged knowledge of disparate racial impact—are wholly unsupported. Plaintiff pleads no facts supporting his conclusory assertion that he had a "property interest" in any communications or data he could previously access via his Facebook account, and he pleads no facts suggesting that Meta had knowledge of "disparate racial impact" in its CSE policy enforcement. Moreover, Plaintiff fails to identify any legislative policy that would require Meta to grant users access to account contents after Meta determines that the user has violated Meta's policies. *See* FAC. ¶ 166. Nor does Plaintiff allege any facts suggesting that it would be net-beneficial for Meta to allow users continued access to their accounts once Meta has determined the user violated Meta's policies.  *Id.*

Accordingly, for all the above reasons, Plaintiff fails to state a UCL claim.

## V.    PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND

Leave to amend is inappropriate where amendment would be futile. *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015). Plaintiff has already amended once, and any additional attempt will be futile, including because Plaintiff is challenging Meta's alleged decision to terminate his account and so his claims will be barred by Section 230(c)(1) no matter what additional facts he pleads.  *See, e.g.*, *Reaud v. Facebook, Inc.*, 2024 WL 4126066, at *5 (N.D. Cal. Sept. 9, 2024) (denying leave to amend where plaintiff could not "allege additional plausible facts to escape Section 230").

## VI.    CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: October 31, 2025                    By: */s/ Michelle Visser*

                                                  Michelle Visser
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
mvisser@orrick.com
Telephone: (415) 773-5518

Attorneys for Defendant
Meta Platforms, Inc.