Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

ANDREA BARTZ, CHARLES              )
GRAEBER, and KIRK WALLACE          )
JOHNSON, individually and on       )
behalf of others similarly         )
situated,                          )
                                   )
          Plaintiffs,              )
                                   )
   VS.                             )    NO. 3:24-CV-05417 WHA
                                   )
ANTHROPIC PBC,                     )
                                   )
          Defendant.               )
_____)

San Francisco, California
Wednesday, April 9, 2025

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiffs:

                    SUSMAN GODFREY LLP
                    1000 Louisiana Street, Suite 5100
                    Houston, Texas  77002
               BY:  JUSTIN A. NELSON, ATTORNEY AT LAW
                    COLLIN FREDRICKS, ATTORNEY AT LAW

                    LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                    Embarcadero Center West
                    275 Battery Street, 29th Floor
                    San Francisco, California 94111
               BY:  DANIEL M. HUTCHINSON, ATTORNEY AT LAW


          (APPEARANCES CONTINUED ON FOLLOWING PAGE)


REPORTED BY:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

1    **APPEARANCES**:  (CONTINUED)

2    For Plaintiffs:

3                              LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                               250 Hudson Street, Eighth Floor
                               New York, New York 10013
4                        BY:  **JACOB S. MILLER, ATTORNEY AT LAW**

5

6    For Defendant:

7                              ARNOLD & PORTER KAYE SCHOLER LLP
                               Three Embarcadero Center, Tenth Floor
                               San Francisco, California 94111
8                        BY:  **DOUGLAS A. WINTHROP, ATTORNEY AT LAW**

9                              ARNOLD & PORTER KAYE SCHOLER LLP
                               777 South Figueroa Street, 44th Floor
10                             Los Angeles, California 90017
                         BY:  **CAMERON KLEIN, ATTORNEY AT LAW**

11

12   Also Present:           **Devon Hanley Cook**

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   Wednesday - April 9, 2025                          12:44 p.m.

 2                       P R O C E E D I N G S

 3                           ---o0o---

 4        THE COURTROOM DEPUTY:  Calling Civil Action 24-5417,

 5   Bartz, et al. versus Anthropic PBC.

 6        Counsel, please state your appearances for the record,

 7   beginning with counsel for plaintiffs.

 8        MR. NELSON:  Thank you, Your Honor.

 9        May it please the Court, Justin Nelson from Susman

10   Godfrey.  I'm joined by Colin Fredricks from Susman Godfrey,

11   Daniel Hutchinson from Lieff Cabraser and Jacob Miller from

12   Lieff Cabraser.

13        THE COURT:  Welcome to you.

14        And?

15        MR. WINTHROP:  Good afternoon, Your Honor.  Doug

16   Winthrop from Arnold & Porter.  I'm here with my colleague

17   Cameron Klein and my client, in-house counsel at Anthropic,

18   Devon Hanley Cook.

19        THE COURT:  Okay.  You wanted to reconsider.

20        MR. WINTHROP:  I do.

21        THE COURT:  I'm all yours.  Please go ahead.

22        MR. WINTHROP:  All right.  Thank you, sir.

23        We request reconsideration of your order dated April 2nd.

24   We believe it was made based on a characterization of the

25   record that was neither accurate nor complete.
```

1      We do not believe that a sanction against Anthropic is

2  warranted here or appropriate, especially one that makes it

3  harder for our side to present to you a thorough and carefully

4  argued reply brief in support of our summary judgment motion,

5  one that will be helpful to you as you decide these important

6  issues.

7      I'll be very brief.  I want to step back for a second.

8      On March 17th, the plaintiffs filed a letter brief moving

9  to compel.  Why were they moving to compel?  Because we had

10  told them about this portion of the Slack data that we thought

11  would be ready to us by March 11th, in time for us to review

12  and produce by March 20th, but that we subsequently had been

13  told that it would not be available to us until early April.

14      The remedy they sought in that motion was an order that

15  our ESI production, in response to plaintiffs' priority search

16  terms, be completed by April 4th so they would have enough time

17  to review the documents before they took depositions and filed

18  their opposition to summary judgment on April 17th.

19      There was no mention in that motion about privilege logs.

20  In fact, four days later -- later, four days later -- on

21  March 21st, plaintiffs wrote to us and proposed that the

22  parties mutually exchange privilege logs on March 28th.

23      Yes, your standing orders say that privilege logs are to

24  be produced commensurate with the documents; but the ESI order

25  in this case, which was entered specifically in this case, said

1    privilege logs are to be produced within 30 days of the day of

2    production.  And the parties had been meeting and conferring

3    cooperatively to agree on an acceptable date for both sides for

4    the exchange of privilege logs.

5        So what happened?  The Slack data came back earlier than

6    we expected, and we produced it to plaintiffs on April 4th.

7    That is, we produced it to them by the very deadline they had

8    requested in their motion to compel so they'd have it in time

9    for depositions and summary judgment motion -- opposition.  And

10   the production was a total of about 500 documents.  That's it.

11       As for privilege logs, after the hearing we had here on

12   March 25th -- that's when privilege logs first came up --

13   plaintiffs, who, like Anthropic, had not yet served a privilege

14   log, served theirs on Friday, March 28th, which was the day

15   after we filed our motion for summary judgment; and we served

16   our privilege log one business day later on March 31st, 2025.

17       That's what happened.  Those are the facts.  And we do not

18   believe those facts support a punitive remedy against

19   Anthropic, one that gives plaintiffs essentially an unlimited

20   extension on their opposition to our summary judgment motion

21   and Anthropic is limited to four days for its reply brief.

22       We believe there's a significant gulf between what

23   actually happened here and the order of the Court.  We don't

24   believe it's fair to Anthropic.  We don't believe it serves the

25   interests of justice or the decision-making process, and we

```
 1    request that the Court reconsider its prior order and reinstate

 2    the prior --

 3         THE COURT:  What was the inaccurate part of their

 4    letter?

 5         MR. WINTHROP:  They mischaracterized the way the

 6    discussion came up about whether we would get an extension --

 7    they would get an extension on our brief.  Their letter seemed

 8    to suggest that we came up with this idea of a -- you know,

 9    that there would be no discussion of any possible remedy or

10    anything, did they need more time, that sort of thing.

11         In fact, what happened was they came to us and said

12    essentially:  You don't get a reply brief.  And they want us to

13    agree to that.

14         And the hearing we had in the -- before you before that on

15    the 25th, you said:  This is my tentative order.  I'm going to

16    give them more time as needed.

17         And what I just described for you, we gave them the

18    documents on April 4th and we gave them the privilege log on

19    March 31.  So why would we agree to them that we don't get a

20    reply brief?

21         THE COURT:  Well, all right.  Go back over the key

22    dates again.

23         MR. WINTHROP:  Yeah.

24         THE COURT:  Today is April 9.

25         MR. WINTHROP:  March 17th, they moved to compel.
```

1          THE COURT:  When were the original due dates of the --

2          MR. WINTHROP:  Yeah.

3          THE COURT:  -- briefs?

4          MR. WINTHROP:  Yes.  Of the what?

5          THE COURT:  Of the briefing on the summary judgment

6     motion.

7          MR. WINTHROP:  Back in the original calendar?

8          THE COURT:  Whatever it was on -- as of April 4th.

9     What was the --

10         MR. WINTHROP:  Oh.  Oh, it's what -- oh, I see.  I

11    understand.

12        We filed ours, our opening brief, on March 27th.

13    Opposition briefs -- their opposition -- it's basically

14    simultaneous with the class cert and summary judgment.

15        Opening briefs, March 27, summary judgment, class cert;

16    opposition briefs April 17th; and then reply briefs two weeks

17    later.  So that's going to be, you know, very beginning of --

18    May 1.

19         THE COURT:  And how did the -- I'm sorry.  I've lost

20    track of it again.  What was -- in the letter that I ruled

21    against you on recently, what was the complaint by the other

22    side that caused me to give them more time?

23         MR. WINTHROP:  You said in the hearing on the 25th --

24    you brought up the issue of privilege logs; and you said that

25    "Well, you know, privilege" -- "They have to have time to

1   review your privilege log."

2        What I think was missing from that whole dialogue, sir,

3   was that the parties, neither one had served a privilege log.

4   Both sides were negotiating over privilege logs.  And at the

5   end of the day, we exchanged privilege logs one day apart.

6        And so it seemed -- it seemed to us that this seemed to

7   you to be a one-sided, lopsided problem where we're the only

8   ones late in our privilege log because we didn't do it when

9   we're supposed to do it and they should get more time.

10       So what you ordered is they get -- they can go after our

11  privilege log and back-and-forth and as much time as they need

12  to resolve it; and seven days after they determine its

13  resolved, then their opposition to our summary judgment brief

14  is due; and then four days later, we have a reply brief.

15       And I suggest to you that there's nothing in this history

16  that would suggest --

17            THE COURT:  All right.  Can you show me the privilege

18  log that you served on -- I think you said the 31st?

19            MR. WINTHROP:  Yes, we served it on the 31st.

20            THE COURT:  Can you show it to me now?

21            MR. WINTHROP:  I could have my colleague pull it up.

22            THE COURT:  I'd like to see it.

23       Angie, could I have a pencil?

24            THE COURTROOM DEPUTY:  Yes.

25            MR. KLEIN:  I'm sorry, Your Honor.  We've produced a

```
 1   few logs by now.  Do you want to see the one that we produced
 2   on March 31st only?
 3            THE COURT:  I'm sorry.  I didn't catch what you -- I
 4   just want to see what -- what did you give -- are you telling
 5   me there are multiple privilege logs?
 6            MR. WINTHROP:  No.  There have been tweaks.  There
 7   have been updates.  But the bulk -- the main one came March 31.
 8   We can send you -- we can show you the March 31.
 9            THE COURT:  All right.
10            MR. KLEIN:  Your Honor --
11            THE COURT:  Let me see that.
12            MR. KLEIN:  -- I have it pulled up on my laptop.
13       May I approach?
14            THE COURT:  Show counsel what you're going to show me.
15            MR. KLEIN:  Okay.
16            MR. WINTHROP:  This is Cameron Klein from Arnold &
17   Porter.
18            THE COURT:  Excellent.  Thank you.
19       Okay.  Can you bring it up here and let me look at
20   whatever you're talking about?
21            MR. WINTHROP:  To the Judge, Cameron.
22            MR. KLEIN:  To the Judge.  Okay.
23            THE COURT:  You're going to have to -- my clerk has
24   left me in my moment of need.  There she is.
25                  (Laptop handed up to the Court.)
```

1          **THE COURT:**  All right.  When I was a lawyer, 26 years

2    ago, I learned that you always bring to the hearing hard copies

3    of the ten most important documents that you think the judge

4    might want to see, not a computer, just for the future.

5          I can't -- it's so small, I can't read it.  I'm sorry.

6          All right.  Give me your main point again.  It's too -- I

7    don't want to see it.  I can't fool with it.  It's too small.

8          What is again your main point?

9          **MR. WINTHROP:**  What do we want?  We want to have the

10   briefing schedule that we originally had, a 49-day -- a

11   seven-week schedule.  We want them to file their opposition

12   when it's due on the 17th.  But most importantly, we want the

13   two weeks for our reply.

14         If the Court feels --

15         **THE COURT:**  I'm going to give you more time for reply.

16         Okay.  Did you mislead me on your side?

17         **MR. NELSON:**  No, we did not mislead you.

18         **THE COURT:**  Well, what was the -- all right.  Why

19   shouldn't I give them what they want?

20         **MR. NELSON:**  Your Honor, first of all, we are at the

21   Court's pleasure.  If -- we raised this issue.  The full

22   correspondence is with the Court that we attached.

23         And we said -- after Your Honor's hearing, we said we

24   think, based upon Your Honor's comment that we get an extra day

25   for every day that they are late for their -- forgetting about

```
 1   the privilege, which we'll talk about in a second -- for their

 2   primary production which was due March 20th, that as of the

 3   March 20th --

 4            THE COURT:  Wait.  He told me it was due on April 4th.

 5            MR. NELSON:  No.  It was due March 20th.

 6            THE COURT:  That's what he just got through telling

 7   me, it was due --

 8            MR. WINTHROP:  No, Your Honor, that's not what I said.

 9            THE COURT:  What did you say?

10            MR. WINTHROP:  They moved to compel on March 17th

11   because we told them we couldn't meet the March 20th date as to

12   that chunk of Slack data we've been debating; you've heard

13   about.

14      They moved to compel.  And the request -- the order they

15   sought from you was an order that we get that data, we do

16   something, we produce it all by April 4th.

17      My only point is, in fact, we did produce it April 4th.

18   We got it back from Slack quicker than we expected.

19            THE COURT:  So it was late.

20            MR. WINTHROP:  We did not meet the March 20th

21   agreement.  Admitted.  Understood.  We told -- the vendor told

22   us they could have it to us.  It was a mistake.  They're not

23   malicious.  It was more data than they thought.

24      We then said:  Okay.  We don't have it.  We don't have the

25   data.  We're not going to meet the deadline because we
```

1    literally don't have it to review it.

2         That's where this started.

3         What then subsequently happened is we got the data.  It

4    came down the pipe from the tubes.  We got it; we reviewed it;

5    we produced it.

6              **THE COURT:**  Yes, on April 4th.

7              **MR. WINTHROP:**  On April 4th.

8              **THE COURT:**  And when was their brief due at that

9    point?

10             **MR. WINTHROP:**  Their brief is not due till April 17th.

11   That's why they asked for it by April 4th because they wanted

12   it in time for depositions and their opposition.

13             **THE COURT:**  Okay.  Why isn't that correct?

14             **MR. NELSON:**  Well, it's not correct because it ignores

15   this Court's hearing on March 25th, which was obviously after

16   the March 17th correspondence where we had no idea what was

17   left.  Your Honor said that for every day that they were late

18   after the March 20th deadline, that we would get an additional

19   day.

20        And we talked about that.  We attached the transcript to

21   the correspondence.  We were trying to nail it down to work out

22   cooperatively when, in fact, our brief would be due, our

23   responsive brief would be due and when their -- potentially

24   their reply brief would be due.

25             **THE COURT:**  Well, at the time you made the motion,

 1    what was the due date of your opposition?

 2          **MR. NELSON:**  Well, I think as of then and currently as

 3    of now, because it has not changed, it's April 17th.

 4          And so we have been concerned that we had been dealing

 5    with -- and I'll talk about it in a second -- significant

 6    production issues that have come up that should have been

 7    produced on March 20th.  It has taken up a significant amount

 8    of time.

 9          Whatever we decide, I -- if Your Honor orders April 17th,

10    we'll hit April 17th.  But whatever we do, I do not think that

11    would be fair to us because I think, coming after the last

12    hearing, we thought that there was going to be another day for

13    every day that they were late.  At every -- whatever else it

14    is, they were two weeks late from their March 20th deadline.

15          And I just want to put that in perspective.  Okay?  They

16    had -- we were expecting a bunch of documents on March 20th and

17    even thereafter.  Prior to when they completed -- they

18    completed, I believe, the evening of April 4th.  We didn't know

19    they were going to complete by that day.  But that morning,

20    prior to that completion, we sent them a list of issues that we

21    saw from their priority production that included the privilege

22    log, which, by the way, was 179 pages -- 179-page privilege

23    log.

24          **THE COURT:**  Just for the Slack stuff or --

25          **MR. NELSON:**  Just for --

1              **THE COURT:**  -- for everything?

2              **MR. NELSON:**  -- the priority production.

3         Within days -- may I approach, Your Honor?

4              **THE COURT:**  Yes.

5              **MR. NELSON:**  I do have copies.

6              **THE COURT:**  Let counsel see what you're about to give

7    me.

8                   (Document handed up to the Court.)

9              **MR. NELSON:**  Within a matter of days -- this is before

10   they had completed their production -- we sent an email listing

11   significant problems with their privilege log.  These included

12   the fact that they had redacted communications from their

13   outside PR firm; they withheld non-privileged attachments; they

14   redacted communications that appear to be about business or

15   technical issues; they were withholding documents that didn't

16   even appear to have lawyers on them.  This was in, again, a

17   matter of days after they sent this.  This is just on the

18   privilege log.

19        We had a meet and confer yesterday about this where I

20   don't believe -- and Mr. Winthrop will correct me if I'm

21   wrong -- I don't believe that they have certainly not committed

22   in writing to produce any of those issues.  And that's on the

23   log itself.

24        On the underlying production, we pointed out a number of

25   issues, again, before their production was complete.  For

1   example, some of the key dates were -- and I'll be very

2   general, given the audience here -- were in early 2021.  Less

3   than 1 percent of the production is from 2021.  We pointed this

4   out to them last week.  In the first four months, critical

5   months of the company, there is one document, one; zero from

6   January of 2021; zero from February of 2021; one from March;

7   and zero from April 2021.

8        We asked for an explanation.  We haven't gotten one.

9        There appears to be some deleted documents that we have

10  been asking about where they are, again, stuff that we were

11  supposed to -- we should have seen by March 20th that were not

12  there.

13       And there are some other issues related to confidentiality

14  and clawbacks in terms of, for example, they produced a

15  document but they said it was under the wrong designation so

16  they're insisting that we look at it in a closed, cloistered

17  room as opposed to being able to look at it in a highly

18  confidential environment in our offices.

19       And I say this just because there are significant issues

20  with their production from that March 20th production that we

21  have been consistently following up with.

22       I do want to be clear.  They want to file -- they have

23  filed a summary judgment.  They insisted -- or they asked for

24  and this Court granted an early summary judgment motion, saying

25  it is a legal issue only.  We were surprised, in this legal

1    issue only, to see two long declarations from fact witnesses

2    and one long declaration from an expert.  But, you know, that's

3    their summary judgment motion.

4         We have been preparing for that.  And, again, if

5    Your Honor orders April 17th, we'll file it by April 17th.  We

6    would appreciate more time on that.  We are still following up.

7    There's been a lot of time dealing with these production and

8    discovery issues that still remain outstanding.  But, you know,

9    we are prepared to go forward at this Court's pleasure on the

10    summary judgment schedule.

11         **MR. WINTHROP:**  Can I briefly respond?

12         **THE COURT:**  Sure.  Yes, you can.

13         I'm trying to contemplate how to deal with the privilege

14    log issues.

15         **MR. WINTHROP:**  The parties negotiated the exchange of

16    privilege logs, and they were one day apart on their privilege

17    logs.

18         What you just heard is a very, obviously, one-sided

19    presentation on a bunch of issues, trying to make it seem like

20    everything is terrible.

21         There are -- for example, they argue about certain

22    contractors being on our privilege log.  There are literary

23    agents on their privilege log.  Non-lawyer literary agents.

24    Right?

25         There's a discussion to be had here about privilege.

1    We're happy to have it.  We're having it.  We're working

2    through all these issues.  I can tell you, we are not taking an

3    aggressive position on privilege and we will not take an

4    aggressive position on privilege.

5        What I ask you to consider, sir, is that we agreed, the

6    parties agreed.  They wanted the logs exchanged on March 28th,

7    and we gave them ours on March -- on March 31.  And they asked

8    for March 28th knowing we were going to miss the March 20

9    deadline.  Remember?  The chronology is important.  They asked

10    for March 28th at -- on March 21.  They knew.  This was all out

11    there.  We already missed the deadline.  That's not the issue.

12        And let me just say, I don't want to squeeze them.  I'm

13    not trying to jam them.  I don't want to be jammed on my reply.

14    I just find that to be very unfair to Anthropic.

15        And so if they need more time, if we should extend -- we

16    have a brief too.  If we're going to do all this work now on

17    priv logs, we have a brief due on the 17th.  We could put them

18    both back a week, keep the reply briefs two weeks -- it's up to

19    you, obviously -- and have the hearing go back a week.

20        I'm fine with being accommodating on whatever time they

21    need to -- you know, to respond to our motion.  I just find

22    this that we're being punished, and I can't figure out why, and

23    that's the thing that I'm very concerned with.  I don't think

24    it helps you; it doesn't help justice; and doesn't help my

25    client.

1          **MR. NELSON:**  May I respond just briefly?

2          **THE COURT:**  Sure.

3          **MR. NELSON:**  Just on the class cert briefing, they

4    have not raised a single issue with our production.  We

5    haven't -- this is the first I'm hearing of any issue with our

6    production.

7          We have put up our expert for class certification.  He was

8    deposed yesterday.  However else happens, the class

9    certification track should remain with the briefing that is on

10   schedule where it is with a hearing on May 15th.

11         Again, this came up -- this particular issue came up

12   because after the March 25th hearing when Your Honor spoke and

13   said that we would get an extra day for every day that they

14   were late -- which is admittedly two weeks from the

15   March 20th deadline -- that we said:  Let's confer and figure

16   out a briefing schedule, and they said:  No.  Your brief is due

17   April 17th.

18         And that's why we filed something asking for clarification

19   from this Court because they said it's due on April 17th.

20         So, again, I think actually there is agreement on this,

21   which is, both sides are not trying to jam up the other side --

22   okay? -- right now.  Okay?  We are simply trying to have

23   significant time and enough time after we have gotten their

24   production and looked at their documents.  There are still,

25   again, significant issues remaining.

 1          And, again, before they even completed their document --

 2    priority document production, we raised these issues.  Where

 3    are your 2021 documents?  Why are there deleted documents?

 4          **THE COURT:**  Well, where is your proof that there were

 5    documents?  You're making it sound like there were and they got

 6    destroyed.

 7              **MR. NELSON:**  Well, because in the production --

 8              **THE COURT:**  What can I do about that?

 9              **MR. NELSON:**  Well, we're asking --

10              **MR. WINTHROP:**  It's completely untrue, by the way.

11          **THE COURT:**  In addition to that, it's untrue.  So,

12    but, see, the problem you want is an indefinite extension.

13          **MR. NELSON:**  No, Your Honor, we don't.  We're just --

14    we are trying -- the way we interpreted this Court's order --

15          **THE COURT:**  I know what I said, and I said it out of

16    frustration.  The lawyering in this case seems to be trying to

17    trick the other side.

18          "Oh, yes, we'll produce the documents.  Oh, yes, we'll

19    produce" -- millions of lawyers.  And then when the time comes

20    to produce the documents, "Oh, it's the fault of the vendor."

21          So I didn't like that.  But I am -- they do deserve a fair

22    opportunity on reply.

23          Okay.  I'm going to make a proposal.

24              **MR. WINTHROP:**  Okay.

25              **THE COURT:**  Your brief is -- the April 17 date will be

```
 1    extended by one week.

 2        And then you get two weeks to reply.

 3            MR. WINTHROP:  Thank you, Your Honor.

 4            MR. NELSON:  Thank you, Your Honor.

 5            THE COURT:  And if there are any issues about

 6    documents, I'm not going to delay it any more than that.

 7    You've got to bring your motion.

 8        And I want -- by the way, on April 23, I'm stepping on an

 9    airplane and going far away, and I will not be dealing with

10    your case for two and a half weeks.  So you're going to have to

11    get along without me for a while.

12        But if you want to bring up some issue, you've got to

13    bring it up, about the privilege log or whatever it's going to

14    be.

15        And if you've committed equal sins on your privilege

16    log -- he says that yours is worse than his.

17            MR. WINTHROP:  Can I --

18            THE COURT:  All right.  Who wants to talk me out of

19    that?

20            MR. WINTHROP:  No.  I think it's a very good idea,

21    Your Honor.  I appreciate that, and I appreciate you restoring

22    our reply.  That's a big relief to us.

23        Question for you.  We have the class cert brief due.

24            THE COURT:  No, I'm not going to change the class

25    cert --
```

1    **MR. WINTHROP:**  Okay.

2    **THE COURT:**  -- because this delay is attributable to

3    your fault.

4    **MR. WINTHROP:**  Okay.

5    **THE COURT:**  So the class cert can move forward on the

6    original schedule.  Then we can start getting some of that work

7    done while there will be a one-week delay, I guess, in your

8    summary judgment.

9    All right.  Is that good?

10    **MR. NELSON:**  Thank you, Your Honor.

11    I do have one logistical question related to your order on

12    additional questions, just so that we're all on the same page.

13    **THE COURT:**  I don't remember that.  What's my order?

14    **MR. NELSON:**  Your Honor issued five questions for

15    both --

16    **THE COURT:**  Oh, yes, yes, yes.

17    **MR. NELSON:**  -- parties to brief.

18    **THE COURT:**  And those, I wrote out myself.

19    **MR. NELSON:**  And the question that -- we have raised

20    this with the other side and we're, I think, jointly trying to

21    reach accommodation but would appreciate Your Honor's guidance

22    on this.  Is --

23    **THE COURT:**  I know what you're going to -- you want

24    more pages.

25    **MR. NELSON:**  Well, whether it's part of the summary

1    judgment --

2          **THE COURT:**  It is.  I want it to be part of the

3    briefing.  Look, these are key issues.  You ought to be

4    briefing them anyway.  But I don't want to give you more pages.

5    You both can work it into your pages that you already have.

6          **MR. WINTHROP:**  That was our understanding of what you

7    wanted, and that's what we were planning to do in our reply

8    brief.

9          **MR. NELSON:**  And it's their summary judgment motion,

10   but because of the schedule, we will go first.  But that is --

11   it's fine, Your Honor.

12         **THE COURT:**  Yes, you'll each have a say on this.

13         **MR. NELSON:**  Yes.  Thank you, Your Honor.

14         **THE COURT:**  Okay.  Are we clear now?

15         **MR. NELSON:**  Thank you, Your Honor.  Yes.  Thank you.

16         **MR. WINTHROP:**  Thank you, Your Honor.

17         **THE COURT:**  All right.  Good luck to both sides.

18         **MR. WINTHROP:**  Thank you.

19         **MR. NELSON:**  Thank you.

20         **THE COURTROOM DEPUTY:**  Court is adjourned.

21              (Proceedings adjourned at 1:11 p.m.)

22                    ---o0o---

23

24

25

1

2                    <u>**CERTIFICATE OF REPORTER**</u>

3          I certify that the foregoing is a correct transcript

4     from the record of proceedings in the above-entitled matter.

5

6     DATE:  Monday, April 14, 2025

7

8

9

10

11     _____

12          Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG

13          CSR No. 7445, Official United States Reporter

14

15

16

17

18

19

20

21

22

23

24

25