UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA BARTZ and KIRK WALLACE JOHNSON, individually, and ANDREA BARTZ, INC., CHARLES GRAEBER, and MJ + KJ, INC., individually and as representatives of the class,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | No.   C 24-05417 WHA<br><br>**ORDER DENYING MOTION TO STAY** |

## INTRODUCTION

Anthropic wants immediate, "meaningful appellate review," skipping over the trial part altogether. In aid thereof, it also seeks an immediate stay of all further proceedings in the district court. A stay is denied.

## STATEMENT

This civil action commenced a year ago. The case management order set deadlines for class certification and summary judgment motions, and a trial date of December 1, 2025. Anthropic asked for leave to file a summary judgment motion prior to class certification. Both motions were allowed to proceed in parallel, more or less. Both have now been granted in part.

As for its partial loss on its summary judgment motion, Anthropic has noticed a hearing to certify that loss (the pirated library part) for interlocutory appeal under Section 1292(b). As for its loss on class certification, Anthropic already has petitioned for review under Rule 23(f).

The immediate motion seeks a complete stay pending resolution of both. The Rule 23(f) petition before our court of appeals states that the instant motion has been briefed but not ruled upon and that, "absent a district court stay, Anthropic will move expeditiously for a stay from" the appeals court (at 9). To assist the court of appeals, this order now explains why a stay would be ill-advised.

## ANALYSIS

1. **SUCCESS ON THE MERITS?**

    A. *REVIEW OF THE FAIR USE ORDER VIA SECTION 1292(b)?*

This order agrees that this case bristles with important issues of "fair use" under the Copyright Act. Anthropic already has prevailed on some of those issues at summary judgment against named plaintiffs. But the remainder of the fair use issues on which it failed to win summary judgment (the pirated library part) should be adjudicated only after a trial so that, on appeal, our court of appeals will have the benefit of a full record and findings, rather than just the self-serving and sanitized declarations served up by Anthropic.

Anthropic argues that it has a fair prospect of success in challenging the district court's denial of summary judgment as to Anthropic's downloading of millions of books from pirate libraries to amass its own central library of "all the books in the world."

The machinations of Anthropic's downloading of pirate libraries and its deployment of bit-torrenting to do so looms large in this case and should be fully before the jury, district judge, and court of appeals before we say the definitive extent to which this copying of pirated materials was fair or not. Similarly, the cause-and-effect relationship involved in its abandoning of bit-torrenting in favor of purchasing and scanning books for its "research library" deserves to be explained in the record. Furthermore, Anthropic recopied only *some* "subsets" of the pirated works to use for training large language models, or LLMs, but kept them *all*. Which works in its collection were actually used to train LLMs, which were not, and why were all retained? Anthropic has refused to come clean on this, even now, and for all we know, most were never used (or not solely used) to train LLMs.

Anthropic asks our court of appeals to ignore all these colorations in its piracy. It seeks a sweeping rule, as a matter of law, that Anthropic was entitled to pirate all the copyrighted works it wanted and to keep them indefinitely so long as any part of the trove was further copied and used to train an LLM. This proposed rule cannot be reconciled with the third statutory fair use factor, the amount and substantiality of the portion taken for the claimed purpose. Here, we know that many books were downloaded from pirate sites with zero of their content ever being used to train an LLM. It's the copyist's burden on fair use to show how much it copied was used and for what. A trial record will do a much better job at getting at the truth of this than Anthropic has done so far. We should hold a trial, let both sides make their cases, and whoever loses can then appeal on a well-developed record. We shouldn't invert the normal appellate process to let Anthropic try to establish a sweeping rule that may or may not even fit the actual facts of our case (or of any real-world case).

Anthropic's proposed rule is, moreover, inconsistent with its own statements at oral argument. Plaintiffs had challenged whether anyone could really pirate a book just because he purports to want to write a book review on Amazon, maybe now or maybe someday. The district judge directed the question to Anthropic's counsel. First, counsel acknowledged the need to inquire whether a book was objectively downloaded for a different or another purpose than the ultimate one subjectively proposed (at Tr. 53):

> You can't just bless yourself by saying I have a research purpose and, therefore, go and take any textbook you want.

Next, Anthropic's counsel explained how to inquire into whether a book was downloaded necessarily and solely for the proposed use (at 56 (emphasis added)):

> Well, in that case I would ask, you know, *did the person keep the copy afterwards*? Did they consume it and enjoy it? Did they have dual purposes here or were they literally a person who only downloaded [a book] to write a review [as promised]?

The fair use order quoted the first in full (at 18). Then, it applied the next one to the record evidence drawn in favor of non-movants to reach its finding (at 19, with facts cited at 4–5):

3

> Anthropic did not use these copies only for training its LLM. Indeed, it retained pirated copies even after deciding it would not use them or copies from them for training its LLMs ever again.

Echoing both, the order concluded by holding Anthropic was "not entitled to an order blessing all copying 'that Anthropic ha[d] ever made after obtaining the data'" (at 31).

Anthropic further states that whether or not it was "library-building" was never at issue. Anthropic accuses the district judge of "*sua sponte* bifurcat[ing] Anthropic's *LLM training* on copyrighted books — which it deemed fair use — from Anthropic's *downloading* of those books" (Rule 23(f) Br. 18 (citation omitted)). There was no sua sponte bifurcation. As even Anthropic explains elsewhere, "Plaintiffs [in fact had] contended that Anthropic's downloading of Plaintiffs' books from unauthorized Internet sources was a 'standalone act of infringement,' notwithstanding Anthropic's transformative use of those books" (Section 1292(b) Br. 5). And, at summary judgment, Anthropic endeavored to rebut "Plaintiffs' central argument that Anthropic's purpose in downloading copies of books should be evaluated in isolation" (MSJ Reply 3). Both sides cited precedent focused on whether copies had been made for permanent "library-building," for a "mini-library," or so on, versus only for some further specific fair use. Among other record facts detailed in the order, Anthropic told third parties it was building a "research library" (at 4–5). And, in its opening briefing, Anthropic itself explained its "collection" of works as a factually distinct step preceding even the "[p]retraining" process for training LLMs (at 4–5), while repeating on reply that the distinction did not make a difference here (at 3, 14): "You have to actually look at what you're doing with the work, not what the person's intentions generally -- in our case obviously our intentions and what we're doing with the work are both transformative" (Tr. 53).

The main point is that fair use on summary judgment was "denied [as to its assertion that] pirated library copies must be treated as training copies" because Anthropic had presented a one-sided and sanitized version of how the works were downloaded into its collection, further copied, and in fact used (at 31, and 8–9). Meanwhile, even the record produced and drawn for non-movants supported that Anthropic had downloaded pirate libraries to build its own library for various further uses, only one being to make further copies for training LLMs (at 4–5, 19).

4

To this day, Anthropic has been unable or unwilling to say which of the pirated works were actually used to train LLMs. It is entirely possible, to repeat, that only a small subset of the pirated works was ever so used. If this issue were to go on appeal now under Section 1292(b), our court of appeals would face the same difficulty as did the district judge. It would have a record that fails to answer some of the most fundamental factual points.

Anthropic's sweeping rule of law as proposed would come down to this (at 10, 12): An AI company is free to pirate copyrighted materials without ever accounting for the extent to which the pirated materials were ever actually and solely used for a fair use. Isn't it much better to have a full trial and a full record before the court of appeals tackles these issues?

*       *       *

In its Rule 23(f) petition, Anthropic objects to the class certification order's treatment of fair use issues. It emphasizes (at 20) that the class certification order had stated it "*is* liable":

> The summary judgment order [on fair use] makes clear that Anthropic is liable for all pirated copies regardless of whether they were used for training and regardless of whether another copy of the book was bought and scanned. To the extent a jury thinks these differences should affect the amount of statutory damages the points can be made on a categorical basis rather than an individual one.

(CC Order 24–25).

Anthropic has maintained that "it believes it will [show] upon more fulsome development of an evidentiary record" that there was only one use, a fair use — training LLMs (Section 1292(b) Br. 14; *see also* CC Opp. 20–21). And, the district court's orders have maintained that Anthropic will have every opportunity to perfect its affirmative defense at trial, presenting evidence for the jury to find the underlying facts needed for the judge to decide fair use in its favor (or not) (*e.g.*, Fair Use Order 31–32; CC Order 26, 28).

### B.   REVIEW OF THE CLASS CERTIFICATION ORDER VIA RULE 23(f)?

Anthropic next argues that it has a fair prospect of success in demonstrating the district court abused its discretion in certifying a class, which remains contingent on the yet-to-be-filed proposed notice form and schedule (due from both sides) and class list (from plaintiffs). The

district court's order rejected two other proposed classes, which neither side petitioned for review.

Anthropic suggests that the district judge is "rush[ing]" this case so he can retire. It is true that the district judge would like to take inactive status near the end of this year or shortly thereafter. But it is not true that the district judge is rushing this case. The trial date was set long ago at the initial case management conference and has not changed since. Keeping a case on track is not the same as rushing the case to trial.

It is important for the sake of effective case management that class notice proceed as set forth in the certification order to go to trial on a class basis in December. A stay would torpedo the trial date and case management schedule. The expense and cost of notice will fall on plaintiffs, not on Anthropic. This process can and should proceed in parallel with the court of appeals's consideration of the Rule 23(f) petition.

Indeed, if we proceed without a stay, by Anthropic's account of the court of appeals's average and even above-average schedule, the appellate court can conclude its Rule 23(f) review before trial.

As to the other issues raised by Anthropic — such as identifying owners, notifying co-owners and counterparties, and resolving any conflicts among them in our case that cannot be resolved collaterally to it — the certification order addressed these concerns fully.

2.   **IRREPARABLE INJURY TO THE PROPONENT ABSENT STAY?**

Anthropic argues it will confront business-threatening injury even before our appeals court completes any review, which Anthropic asserts also as a merits issue for the class certification order under a topsy-turvy version of the "death knell" doctrine.

Anthropic's doomsday calculation is premised on every eventuality coming out completely against its druthers. The crux is its assumption that Anthropic will lose and lose badly at every trench, and that this will lead it to have to post a bond for appeal so large as to kill the entire company. This piles assumption upon assumption. For all we know at this stage, Anthropic will persuade the jury to find facts vindicating it completely (CC Order 28). But if Anthropic loses big it will be because what it did wrong was also big.

6

**CONCLUSION**

A stay is denied. Anthropic and plaintiffs' jointly proposed notice form and schedule remain due by noon on August 15, the proposed class list remains due noon September 1, and our trial date remains scheduled — as it has been from the start — to begin December 1.

**IT IS SO ORDERED.**

Dated: August 11, 2025.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE