**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREA BARTZ, ANDREA BARTZ, INC., CHARLES GRAEBER, KIRK WALLACE JOHNSON, and MJ + KJ, INC., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendants. | Case No.: 3:24-cv-05417-WHA<br><br>**DECLARATION OF JENNIFER KEOUGH REGARDING PROPOSED CLASS NOTICE PLAN** |

I, JENNIFER M. KEOUGH, declare and state as follows:

1.      I am Chief Executive Officer, President, and Co-Founder of JND Legal Administration LLC ("JND"). I have more than 20 years of legal experience creating and supervising notice and claims administration programs and have personally overseen well over 1,000 matters. I will oversee this matter personally as well. I am regularly called upon to submit declarations in connection with JND's notice and administration work. A comprehensive description of my experience is attached as **Exhibit A**.

2.      I submit this Declaration based on my personal knowledge, as well as upon information provided to me by experienced JND employees and Counsel for the Plaintiffs and

- 1 -

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:24-CV-05417-WHA

Defendants, to describe the proposed Notice Plan and address why it is consistent with other best practicable court-approved notice plans and the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), the Due Process Clause of the United States Constitution, and any other applicable statute, law or rule, as well as the Federal Judicial Center ("FJC") guidelines for best practicable due process notice.

### BACKGROUND AND EXPERIENCE

3.    ***Full-Service Provider.*** JND is a leading legal administration services provider with offices throughout the United States and its headquarters in Seattle, Washington. JND has extensive experience with all aspects of legal administration and has administered hundreds of class action matters. JND's class action division provides all services necessary for the effective implementation of class actions including: (1) all facets of legal notice, such as outbound mailing, email notification, and the design and implementation of media programs; (2) website design and deployment, including online claim filing capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) calculation design and programming; (7) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (8) qualified settlement fund tax reporting; (9) banking services and reporting; and (10) all other functions related to the secure and accurate administration of class actions.

4.    ***Government Relationships.*** JND is an approved vendor for the United States Securities and Exchange Commission, the Federal Trade Commission, and the Consumer Financial Protection Bureau. In addition, we have worked with a number of other government agencies including the U.S. Equal Employment Opportunity Commission, the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Federal Communications Commission, the Department of Justice, and the Department of Labor. We also have Master Services Agreements with various corporations and banks, which were awarded after JND

underwent rigorous reviews of our systems, privacy policies, and procedures. JND has also been certified as SOC 2 Type 2 compliant by noted accounting firm Moss Adams.[1]

5.    ***Industry Recognition.*** JND has been recognized by various publications, including the *National Law Journal*, the *Legal Times*, and the *New York Law Journal*, for excellence in class action administration. JND was named the #1 Class Action Claims Administrator in the U.S. by the national legal community for multiple consecutive years, and we were inducted into the *National Law Journal* Hall of Fame for having held this title for the fourth year in a row. JND was also recognized as the Most Trusted Class Action Administration Specialists in the Americas by *New World Report* (formerly *U.S. Business News*) in the publication's 2022 Legal Elite Awards program.

6.    ***Complex Matters.*** The principals of JND collectively have over 80 years of experience in class action legal and administrative fields. JND has overseen the administration of some of the most complex administration programs in recent years and regularly prepares and implements court-approved notice campaigns throughout the United States.

7.    JND was appointed as the notice and claims administrator in the landmark $2.67 billion Blue Cross Blue Shield antitrust settlement in which we mailed over 100 million postcard notices; sent hundreds of millions of email notices and reminders; placed notice via print, television, radio, internet, and more; staffed a call center with 250 agents during the peak of the notice program; and received and processed more than eight million claims. I am the Court-appointed notice expert in that case. JND was also appointed the settlement administrator in the $1.3 billion Equifax Data Breach Settlement, where we received more than 18 million claims. I supervised all aspects of direct notice, including email notice that was sent twice to over 140 million

---

[1] As a SOC 2 Compliant organization, JND has passed an audit under AICPA criteria for providing data security.

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:24-CV-05417-WHA

class members. The interactive website received more than 130 million hits and the call center was staffed with 1,500 agents at the peak of call volume.

8.      Other large JND matters include a voluntary remediation program in Canada on behalf of over 30 million people; the $1.5 billion Mercedes-Benz Emissions Settlements; the $120 million GM Ignition Switch Settlement, where we mailed nearly 30 million notices and processed over 1.5 million claims; the $215 million USC Student Health Center Settlement on behalf of women who were sexually abused by a doctor at USC; the recent National Association of Realtors ("Realtors") settlements totaling over $1 billion thus far; as well as hundreds of other matters.

9.      ***Extensive Copyright Class Action Experience.*** I also have vast copyright class action experience, as outlined below.[2]

10.      The $14 million NMPA Limewire Settlement resulted from a lawsuit on behalf of NMPA/HFA alleging copyright infringement by Limewire and its owners. Claimants were able to submit supplementary documentation as part of their claim, which was reviewed in coordination with an independent auditor to ensure that all eligible income was considered when calculating settlement awards.

11.      The $130 million Napster, Inc. Copyright Settlement arose from a lawsuit brought by HFA alleging that Napster facilitated widespread copyright infringements. In addition to calculating the participating publishers' market share using HFA's mechanical income data, my team managed high call volume, communicated regularly with the class, and conducted post-distribution outreach to maximize check cashing rates.

12.      The $5.4 million XM Satellite Radio Copyright Settlement was the result of a lawsuit alleging that XM Radio violated class rights in connection with radios capable of recording XM transmissions. The process required intake of claims containing extensive lists of both musical

---

[2] The provided experience includes matters that I personally oversaw while employed at another legal administration company.

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:24-CV-05417-WHA

compositions and sound recordings, ascertaining which of those were eligible by coordinating with PROs, and carrying out separate distribution calculations for each class.

13.    The $2 million Sirius Satellite Radio Copyright Settlement involved a lawsuit alleging that Sirius Satellite Radio violated rights in connection with radios capable of recording transmissions. Administering this matter involved similar steps to those undertaken in the XM settlement.

14.    The $12 million *Music Force LLC v. Viacom Inc.* Settlement emerged from a lawsuit alleging that MTV Networks embodied certain musical compositions and sound recordings in transmissions without authorization. Settlement awards were calculated based on eligible songs.

15.    The $2.75 million *Music Force v. Black Entertainment Television* settlement arose from a lawsuit alleging that musical compositions and sound recordings were embodied in transmissions on Black Entertainment Television's networks without authorization. As part of this engagement, my team established an interactive website enabling potential class members to search song titles involved in the settlement.

16.    ***Legal Notice Expertise***. JND's Legal Notice Team operates under my direct supervision and researches, designs, develops, and implements a wide array of legal notice programs to meet the requirements of Rule 23, as well as relevant state court rules. In addition to providing notice directly to potential class members through direct mail and email, we use a variety of media channels, including newspapers, press releases, magazines, trade journals, radio, television, social media, and the internet. Our media campaigns, which are regularly approved by courts throughout the United States, are customized for each case based on the circumstances and allegations of the case, the demographics of the class, and the habits of its members, as reported by various research and analytics tools.

17.    During my career, I have submitted several hundred declarations to courts throughout the country attesting to our role in the creation and launch of various notice programs.

- 5 -

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:24-CV-05417-WHA

## CASE BACKGROUND

18.    In its July 17, 2025, Order on Class Certification (ECF No. 244), this Court certified a Class consisting of all beneficial or legal copyright owners of the exclusive right to reproduce copies of any book included in the versions of LibGen or PiLiMi downloaded by Anthropic ("Class Members"). "Book" refers to any work possessing an ISBN or ASIN which was registered with the United States Copyright Office within five years of the work's publication and which was registered with the United States Copyright Office before being downloaded by Anthropic, or within three months of publication. Excluded from the Class are the directors, officers and employees of Anthropic, personnel of federal agencies, and district court personnel.

19.    This Court also ordered a "rigorous notice process," including (i) "first-class mail and email to the author, publisher, and copyright owner listed on the copyright certificate for each work recorded; (ii) first-class mail and email to all trade and university publishers in the United States; and (iii) publication notice at least once in a trade journal.

20.    Our proposed Notice Plan provides for the "rigorous notice process."

## NOTICE PLAN OVERVIEW

21.    The objective of the proposed Notice Plan is to provide the best notice practicable, consistent with the methods and tools employed in other court-approved notice programs. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers a Notice Plan with a 70% - 95% reach effective.[3]

22.    The proposed Notice Plan consists of the following components, as further described in the sections below:

   a.    Direct notice by first-class mail and email to all potential Class Members for whom a mailing address and/or email address can be located, including all authors,

---

[3] Reach is the percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once over the course of a campaign. Reach factors out duplication, representing total different/net persons.

publishers, copyright-registered authors (if different), and copyright-registered claimants (if different) whose works were downloaded, as well as to all major, regional, and university presses;

b.    Supplemental digital and trade media to extend reach further;

c.    Distribution of a national press release, including to journalists who specialize in the education and publishing industries;

d.    A case-specific website with a searchable Class list;

e.    A toll-free number, email address, and post office box through which Class Members may obtain more information about the action and request that the Long Form Notice, attached as **Exhibit B**, be sent to them;

f.    A QR Code (a matrix barcode) that will allow quick and direct access to the case website through a mobile device; and

g.    Additional efforts as needed to optimize notice based on a real time analysis of engagement.

23.    Based on my experience in developing and implementing class notice programs, I believe the proposed Notice Plan will provide the best notice possible given the circumstances.

## **DIRECT NOTICE**

24.    An adequate notice plan needs to satisfy "due process" when reaching a class. The United States Supreme Court, in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), stated that direct notice (when possible) is the preferred method for reaching a class. In addition, Rule 23(c)(2) of the Federal Rules of Civil Procedure provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."

- 7 -

25.    JND will send the Postcard Notice, attached as **Exhibit C**, via First Class mail, as well as an Email Notice, attached as **Exhibit D**, to all potential Class Members for whom a physical mailing address and/or email address is available. It is JND's understanding that mailing addresses and/or email addresses are available for a significant portion of the Class.

26.    ***Collecting Data.*** Class Counsel will collect contact information directly from authors, many of whom have already provided their contact information to Class Counsel voluntarily through the course of this case. Class Counsel also launched a secure intake portal at https://www.lieffcabraser.com/anthropic-author-contact/ where authors can enter their mailing address, email address, book title(s), and ISBN/ASIN(s).

27.    The author intake link above will be distributed to leading author organizations (e.g., Authors Guild and the Authors Registry), large literary agencies (e.g., William Morris Endeavor, CAA-ICM, and Writers House), and author, agent, and writing-industry organizations (e.g., the Association of American Literary Agents, Dramatists Guild, Novelists Inc., Romance Writers, Sisters in Crime). These author organizations and literary agencies have agreed to share the author intake webpage with their members.

28.    The Author's Guild and the Author's Registry have provided Class Counsel with the author mailing and email addresses from their proprietary databases strictly for the limited purpose of providing the Court-ordered notice.

29.    Publishers will provide author contact information for all authors whose books they published; Class Counsel will collect and compile publisher data for the specific works at issue directly from the U.S. Copyright Office; and Class Counsel has engaged Bowker ISBN Services ("Bowker") to supply publisher contact information, including mailing and email addresses.

30.    In addition, JND will supplement the Class data sources above with a purchased contact list that includes the following: "Writer" as Occupation, Commercial and Literary Individuals, Publishers and Writers.

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:24-CV-05417-WHA

31.   ***Class Data.*** Once the data is received from Class Counsel, JND will store the Class data for this matter in a secure case-specific database. JND employs appropriate administrative, technical and physical controls designed to ensure the confidentiality and protection of Class Member data, as well as to reduce the risk of loss, misuse, or unauthorized access, disclosure, or modification of Class Member data.

32.   ***Postcard Notice.*** Prior to mailing notice, JND staff will update the addresses using the United States Postal Service ("USPS") National Change of Address ("NCOA") database.[4] JND will track all notices returned undeliverable by the USPS and will promptly re-mail notices that are returned with a forwarding address. We will also use advanced address search tools to identify a new mailing address for any notice returned without a forwarding address.

33.   ***Email Notice.*** JND uses industry-leading email solutions to achieve the most efficient email notification campaigns. Our Data Team is staffed with email experts and software solution teams to conform each notice program to the particulars of the case. JND provides individualized support during the program and manages our sender reputation with the Internet Service Providers ("ISPs"). For each of our programs, we analyze the program's data and monitor the ongoing effectiveness of the notification campaign, adjusting the campaign as needed. These actions ensure the highest possible deliverability of the email campaign so that more potential Class Members receive notice.

34.   Prior to sending the email notice, JND will evaluate the email for potential spam language to improve deliverability. This process includes running the email through spam testing

---

[4] The NCOA database is the official USPS technology product which makes changes of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream.

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:24-CV-05417-WHA

software, DKIM [5] for sender identification and authorization, and hostname evaluation. Additionally, we will check the send domain against the 25 most common IPv4 blacklists. [6]

35.    For each email campaign, including this one, JND will utilize a verification program to eliminate invalid email and spam traps that would otherwise negatively impact deliverability. We will then clean the list of email addresses for formatting and incomplete addresses to further identify all invalid email addresses.

36.    To ensure readability of the email notice, our team will review and format the body content into a structure that is applicable to all email platforms. Before launching the email campaign, we will send a test email to multiple ISPs and open and test the email on multiple devices (iPhones, Android phones, desktop computers, tablets, etc.) to ensure the email opens as expected.

37.    Additionally, JND will include an "unsubscribe" link at the bottom of the email notice to allow Class Members to opt out of any additional email notices from JND. This step is essential to maintain JND's good reputation among the ISPs and reduce complaints relating to the email campaign.

38.    Emails that are returned to JND are generally characterized as either "Hard Bounces" or "Soft Bounces." A Hard Bounce occurs when the ISP rejects the email due to a permanent reason such as the email account is no longer active. A Soft Bounce occurs when the email is rejected for temporary reasons, such as the recipient's email address inbox is full.

39.    When an email is returned due to a Soft Bounce, JND will attempt to resend the email notice up to three additional times to secure higher deliverability. If the Soft Bounce email continues

---

[5] DomainKeys Identified Mail, or DKIM, is a technical standard that helps protect email senders and recipients from spam, spoofing, and phishing.

[6] IPv4 address blacklisting is a common practice. To ensure that the addresses being used are not blacklisted, a verification is performed against well-known IP blacklist databases. A blacklisted address affects the reputation of a company and could cause an acquired IP addresses to be blocked.

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:24-CV-05417-WHA

to be returned after three attempts, the email will be considered undeliverable. Emails that result in a Hard Bounce are also considered undeliverable.

## SUPPLEMENTAL DIGITAL NOTICE

40.    To supplement the direct notice effort, JND recommends serving **26.5 million digital impressions**[7] through the leading digital network (Google Display Network or "GDN") and three popular social media platforms (Facebook, Instagram, Reddit). All impressions will be targeted to individuals who are likely authors/publishers.

41.    ***Targeting Techniques***. Multiple targeting strategies will be used, including the following techniques:

42.    *Audience Targeting* optimizes efforts based on demographics, behavior, and interests of potential Class Members.

43.    *Contextual Targeting* is the practice of displaying a digital ad based on a website's content.

44.    *Geotargeting* optimizes efforts based on the location of potential Class Members.

45.    *Keyword Targeting* allows advertisers to target users based on their search queries, recent social media posts or engagement with websites or posts that feature specific keywords.

46.    *Machine Learning* is used across all digital media platforms in order to optimize campaigns in real time based on placements, times of day and sub-targets within the larger demo and geo target that are likely to drive traffic.

47.    *Predictive Targeting* (GDN only) uses multiple data points (search queries, sites visited, and digital behavior trends) to make inferences regarding future behavior/performance for a given campaign.

---

[7] Impressions or Exposures are the total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. Impressions are a gross or cumulative number that may include the same person more than once. As a result, impressions can and often do exceed the population size

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:24-CV-05417-WHA

48.    _**GDN.**_ The GDN activity will target adults 25 years of age or older ("Adults 25+") who (1) are *in-market* for Book Promotion Services and Information, Literary Agents, Book Publishing Services, Book Publishers, Publishers Accepting Submissions; (2) have *browsed* websites such as selfpublishing.com, janefriedman.com, scribophile.com, thebookseller.com, publishersweekly.com, publishingperspectives.com, chronicle.com, writersdigest.com, thebookdesigner.com, insidehighered.com, edupub.org, and reedsy.com; and/or (3) have *searched Google* for relevant terms such as AI training data, manuscript, amazon kdp, Claude AI, books used to train AI, Reedsy, critique circle, ASIN, copyright law, indie author, AI copyright, Scribophile, author royalties, book publishing, AI ethics, publishing rights, pirated books, copyright registration, copyright infringement, author lawsuit, LibGen, how to publish a book.

49.    _**Facebook and Instagram**_. Activity with Facebook and Instagram will target Adults 25+ with job titles including Journalist/Writer, Online Publisher, Publisher and/or who have additional interests in Book publisher, bookselling, electronic publishing, Nobel prize in literature, publishing, self-publishing.

50.    _**Reddit.**_ Activity with Reddit will target adults 18 years of age or older ("Adults 18+") who utilize keywords such as amazon kdp, ASIN, author lawsuit, author royalties, AI copyright, AI ethics, AI training data, book publishing, books used to train AI, Claude AI, copyright infringement, copyright law, copyright registration, critique circle, indie author, ISBN, how to publish a book, LibGen, manuscript, pirated books, publishing rights, Reedsy, Scribophile; and/or communities r/selfpublishing, r/publishing, r/selfpublish, r/writers, r/writing.

51.    The digital activity will be served across all devices (desktop, laptop, tablet and mobile), with a heavy emphasis on mobile devices. The digital ads, attached as **Exhibit E**, will directly link to the case website, where Class Members may access more information about the action, including the Long Form Notice.

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:24-CV-05417-WHA

## SUPPLEMENTAL TRADE MEDIA[8]

52.    To supplement the direct notice effort, JND also proposes print and digital notice placements with leading trade publications such as: *Ars Technica*, *The Atlantic*, *The Chronicle of Higher Education*, Goodreads, *Poets & Writers Magazine*, *Writer's Digest*, and *Publishers Weekly*.

53.    *Ars Technica* is a trusted source for technology news, tech policy analysis, and scientific breakthroughs.

54.    *The Atlantic* features articles on culture and the arts, in addition to politics, foreign affairs, business and the economy.

55.    *The Chronical of Higher Education* is a trusted source of information for university faculty and student affairs professionals, including staff members and administrators.

56.    Goodreads is a popular social networking site for readers and authors where users can track books, post reviews, join book clubs, and connect over shared reading interests.

57.    *Poets & Writers Magazine* is a leading literary publication for poets, fiction writers, and creative nonfiction authors.

58.    *Writer's Digest* is a respected magazine and website providing tips, tutorials, and market listings to help writers improve their craft and get published.

59.    *Publishers Weekly*, referred to as the "bible of the book business," is the leading weekly trade news platform focused on providing news, reviews, bestseller lists and industry analysis for publishers, booksellers, librarians, and literary agents.

60.    Digital placements will be similar to those in **Exhibit E**. A sample print ad is attached as **Exhibit F**.

---

[8] Trade media have limited availability and publishers reserve the right of ad refusal. If placement of any of the proposed trade media is not feasible at the time of implementation, a comparable alternative will be sought.

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:24-CV-05417-WHA

**PRESS RELEASE**

61.    To further assist in getting "word of mouth" out about the action, JND proposes the distribution of a press release at the start of the campaign to approximately 5,000 media outlets nationwide, including to journalists who specialize in reporting on higher education, teaching, books and publishing.

62.    The Press Release is attached as **Exhibit G**.

**CASE WEBSITE**

63.    JND will establish and maintain an informational and interactive, case-specific website, which will have an easy-to-navigate design and will be formatted to emphasize important information and deadlines. The website will include a page with answers to frequently asked questions, contact information, key dates, and links to important case documents including the Long Form Notice, the operative Amended Complaint, and the Class Certification Order. The case website will also include a class database that can be searched by author, title, publisher, ISBN number, or ASIN number.

64.    The website address will be prominently displayed in all printed notice documents, and accessible through email and digital notices, as well as through a QR code in the mailed notice.

65.    The case website will be ADA-compliant and optimized for mobile visitors so that information loads quickly on mobile devices and will also be designed to maximize search engine optimization through Google and other search engines.

**TOLL-FREE NUMBER, EMAIL, AND P.O. BOX**

66.    JND will establish and maintain a 24-hour, toll-free telephone line where callers may obtain information about the action; a dedicated email address to receive and respond to Class Member inquiries; and a post office box to receive Class Member correspondence and exclusion requests.

67.    Class Members will also have the option to speak with Customer Service Representatives five days a week during business hours, who will provide case-related information and can fulfill requests for notice. JND has multiple call center sites, all in the United States, and can ensure enough staffing and redundancy to handle any volume of calls we receive on this matter.

## QR CODE

68.    JND will create a QR Code that will allow quick and direct access the case website through mobile devices. The QR Code is included, where practicable, in printed notice documents.

## TIMING

69.    JND will begin sending direct notice within 7 days of receiving potential Class Member contact information from Class Counsel. JND expects to receive Class data on or before September 1, 2025. Notice will be completed by September 26, 2025. The exclusion deadline will be 45 days after the notice completion date, or November 11, 2025.

## NOTICE DESIGN AND CONTENT

70.    My staff and I have reviewed and provided input to the Parties on the form and content of the notice documents, subject to any Court-ordered revisions and any necessary formatting changes needed for publication. All notice documents are written in plain language and are consistent with documents other courts have determined comply with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and any other applicable statute, law or rule. Based on my experience designing class notice programs, in my opinion, the notice documents comply with these requirements, as well as the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.

71.    The notice contains plain and easy-to-read summaries of the case. It includes the nature of the action; the class definition; a summary of the claims, issues, and positions involved; and the process for opting out. The notice informs Class Members that they will be bound by the

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:24-CV-05417-WHA

outcome and judgment unless they submit a timely opt out, and that only those who register for payment will be eligible to recover in the event of a judgment in favor of the Class.

72.    In addition, the notice informs Class Members that, if the case settles, they will receive a settlement notice—which will include an opportunity to register for payment and a second opportunity to opt out.

**REACH**

73.    Utilizing all of the proposed Class Member contact sources and implementing the supplemental digital effort, trade media placements, and press release maximizes the likelihood of reaching *all* relevant publishers. As a result, the anticipated reach of the proposed Notice Plan is expected to exceed that of other court approved programs, as well as the standard set forth by the FJC.

**CONCLUSION**

74.    In my opinion, the Notice Plan as described herein will provide the best notice practicable under the circumstances and exceeds that of other similar court-approved best notice practicable notice programs. The Notice Plan is designed to reach as many Class Members as possible and provide them with the opportunity to review a plain language notice with the ability to easily take the next step and learn more about the action.

I declare under the penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed on August 15, 2025 at Seattle, Washington.

JENNIFER M. KEOUGH

JENNIFER M. KEOUGH DECLARATION
CASE NO. 3:24-CV-05417-WHA