**Pages 1 - 20**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

| | |
|---|---|
| ANDREA BARTZ, individually and on behalf of others similarly situated,  , | ) ) ) ) |
| Plaintiffs, | ) |
| VS. | )     **NO. C 24-05417 WHA** |
| | ) |
| ANTHROPIC PBC, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

San Francisco, California
Thursday, September 25, 2025

**TRANSCRIPT OF PROCEEDINGS**

<u>APPEARANCES</u>:
For Plaintiffs:

LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
250 Hudson Street - 8th Floor
New York, New York 10013
BY:  **RACHEL GEMAN, ATTORNEY AT LAW**
**JACOB S. MILLER, ATTORNEY AT LAW**

LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
275 Battery Street - 29th Floor
San Francisco, California  94111
BY:  **DANIEL M. HUTCHINSON, ATTORNEY AT LAW**
**JALLE DAFA, ATTORNEY AT LAW**
**ELIZABETH J. CABRASER, ATTORNEY AT LAW**
**AMELIA HASELKORN, ATTORNEY AT LAW**

SUSMAN GODFREY LLP
1000 Louisiana Street - Suite 5100
Houston, Texas  77002
BY:  **JUSTIN A. NELSON, ATTORNEY AT LAW**
**SAMIR DOSHI, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
U.S. District Court - Official Reporter

**APPEARANCES:**  (continued)

For Plaintiff:

             SUSMAN GODFREY LLP
             One Manhattan West - 50th Floor
             New York, New York  10001
    BY:  **JAMES CRAIG SMYSER, ATTORNEY AT LAW**

             EDELSON PC
             350 North LaSalle Street - 14th Floor
             Chicago, Illinois 60654
    BY:  **JAY EDELSON, ATTORNEY AT LAW**
        **J. ELI WADE-SCOTT, ATTORNEY AT LAW**

             OPPENHEIM & ZEBRAK LLP
             4530 Wisconsin Avenue, NW - Suite 500
             Washington, D.C.  20016
    BY:  **JEFFREY M. GOULD, ATTORNEY AT LAW**
        **MATTHEW J. OPPENHEIM, ATTORNEY AT LAW**

             COWAN DEBAETS ABRAHAMS AND SHEPPARD LLP
             9454 Wilshire Blvd. - Suite 901
             Beverly Hills, California  90212
    BY:  **NANCY E. WOLFF, ATTORNEY AT LAW**

For Defendant:
             MORRISON & FOERSTER LLP
             425 Market Street
             San Francisco, California  94105
    BY:  **DARALYN J. DURIE, ATTORNEY AT LAW**

             ARNOLD PORTER KAYE SCHOLER LLP
             Three Embarcadero Center - 10th Floor
             San Francisco, California  94111
    BY:  **DOUGLAS A. WINTHROP, ATTORNEY AT LAW**
        **JOSEPH R. FARRIS, ATTORNEY AT LAW**

**Thursday - September 25, 2025**                    **1:01 p.m.**

**P R O C E E D I N G S**

**---oOo---**

**THE CLERK:** All rise. Court is now in session. The Honorable William Alsup presiding.

(Pause in proceedings.)

**THE CLERK:** Calling civil action 24-5417, Bartz, et al. versus Anthropic PBC.

Counsel, please approach the podium and state your appearances for the record beginning with Counsel for the Plaintiffs.

**MR. NELSON:** Good afternoon, Your Honor, Justin Nelson from Susman Godfrey. I'm joined today by Rachel Geman from Lief Cabraser; Craig Smyser from Susman Godfrey; Jay Edelson from Edelson Law; Eli Wade-Scott from Edelson Law; Matt Oppenheim from Oppenheim Zebrak; Jalle Dafa from Leif Cabraser, Nancy Wolff from Cowan DeBaets, Samir Doshi from Susman Godfrey; Jeff Gould from Oppenheim Zebak; Elizabeth Cabraser; Dan Hutchinson from Lief Cabraser, and Amelia Haselkorn from Leif Cabraser, and Jake Miller from Lief Cabraser.

I'm also joined, Your Honor, by Jennifer Keough, the CEO of J&D, our proposed claims administrator, and all three of the named Plaintiffs; Andrea Bartz, Charles Graber and Kirk Wallace Johnston. Thank you.

**THE COURT:** Welcome to all of you. Thank you. And?

**MS. DURIE:** Good morning, Your Honor, Daralyn Durie from Morrison Foerster for Anthropic. I am joined this afternoon by Doug Winthrop and Joe Farris from Arnold & Porter, and by Jeff Bleich and Devon Hanley Cook from Anthropic. Thank you.

**THE COURT:** Welcome, especially Mr. Bleich, good to see you again. Anyone else you want to introduce?

**MS. DURIE:** No, Your Honor.

**THE COURT:** Okay. Well, let's start with what updates would you like to give me. I have read your submissions but any other updates.

**MR. NELSON:** Your Honor, we tried to be as comprehensive as possible in our filings here. We are seeking preliminary approval of this historic settlement, which we hope by our filings has demonstrated the overwhelming support from a broad cross-section of authors and publishers and the named Plaintiffs themselves.

**THE COURT:** Okay. Anything on your side?

**MS. DURIE:** No, Your Honor.

**THE COURT:** All right. Let me ask you a few questions then. There's an abort clause. Let's just focus on that. Let's say that the percentage is met and the Defendants abort the settlement; but, meanwhile, that nice lady back there would have done a lot of work. Who is going to pay her? Plaintiffs?

**MR. NELSON:** Yes, we are taking that responsibility.

**THE COURT:**  It will be on you completely.

**MR. NELSON:**  Absolutely.

**THE COURT:**  All right.  Same question if I were to decertify the class later.

**MR. NELSON:**  Yes, Your Honor, we are taking the full risk of expenses should the class not go through final approval.

**THE COURT:**  I'm not planning to decertify; but if a bunch of nightmare scenarios occur, then I'm not -- that could happen but I don't think will happen -- but if they did and there was a decertification, then I want to make sure of two things.  You would get all of your money back; is that correct?

**MS. DURIE:**  Correct.

**THE COURT:**  And the administrator will be paid by Plaintiffs' counsel.

**MR. NELSON:**  Absolutely, Your Honor.

**THE COURT:**  Just wanted to make that clear.

**MR. NELSON:**  We are taking that risk, absolutely.

**THE COURT:**  That's part of the big bucks that Plaintiffs' Counsel wheels and deals in month in and month out, but I want to make it clear, all right.

Next, I think there's a solution and maybe you have already said it; but if it's not, I want to make it clear; that if there is a dispute among the publisher and -- between the publisher and the author -- let's take the simplest case --

then that gets you -- you propose that it be first looked at by the administrator and then by a special master.

MR. NELSON:  That's correct, Your Honor.

THE COURT:  I was worried for awhile -- and I know you put in the standard -- but you didn't put in the cases going the other way -- but I was worried that can I require them to go to a special master rather than to a jury to decide those issues.  And I think we can if the notice to class members flat out says "if you submit a claim, you are consenting to adjudication of any issues by, A, the administrator and then the special master."  Is that in your notice then?

MR. NELSON:  It is, Your Honor.  And Your Honor also -- in the *Hernandez versus Wells Fargo* case -- did this very same thing is appoint a special master that did adjudicate.  And it says -- it is very clear in both the claims form -- at the very end of the claims form it says that you are adjudicating and you are consenting to a special master, and it is clear in the long form notice in both places.

THE COURT:  All right.  That's very good.  All right.  Next, you make a good point about the re-inclusion.  Now, I want to say, I don't like the re-inclusion.  I can't say it has never been done in the history of mankind, but I have never seen it before; and it invites a problem.  I will tell you what the problem is in a minute, but I do see a legitimate use for that.

Let's say two authors, one publisher, one author opts out, the other two want to stay in, and they go and they talk to the opt-out into taking back the opt-out, I can see that as a legitimate one-work solution.  Okay, no problem with that scenario.

Here is where I have some problem:  Publisher opts out 400 books and maybe even meets the -- triggers, although it is a secret.  It is under seal but they might make a guess as to what it is -- and it might trigger the opt-out -- I'm sorry, the abort clause percentage.  And then the publisher -- I'm sorry, probably some publishers here and I'm being mean to them.  I'm picking on them but they are the logical one.

Then the publisher says, Oh, we will come back in but we want more money.  Other lawyers might give them more money because there's so many hundreds of millions of dollars potentially -- maybe not hundreds of millions but a lot of money involved for the attorneys.

I know there are other lawyers out there who would do that.  You would not do that.

MR. NELSON:  And we are not as -- this is question 8 of Your Honor's questions.  We are not aware of anything.  We think it would be entirely unethical to do something like that.  And if it came to our attention, we would immediately report it to the Court.

THE COURT:  Not only would you do that -- and you too.

**MS. DURIE:**  Yes.

**THE COURT:**  -- but I would refer it to the U.S. Attorney for obstruction of justice.  If I was a publisher, I wouldn't come close to that scenario.

**MR. NELSON:**  In all -- and Mr. Edelson from publisher's coordination counsel is here and can address that -- there has been absolutely no indication --

**THE COURT:**  That's good.

**MR. NELSON:**  -- at all from any of the publishers -- the publishers are here -- they have been quite effective in making this settlement work.

**THE COURT:**  No side payments, no side agreements.

**MR. NELSON:**  Absolutely not.

**THE COURT:**  Nothing that could be a little quid pro quo for the next case down the line, nothing like that.  They have to -- here is the problem, then they would be getting something better than the rest of the class, which is not -- which upsets the entire plan of distribution.

**MR. NELSON:**  Absolutely, Your Honor.

**THE COURT:**  And that would be wrong.  We won't do that.  I have your word.

**MR. NELSON:**  And we --

**THE COURT:**  We understand each other on this.

**MR. NELSON:**  Absolutely.  We are in 100 percent accord on that.

**THE COURT:** All right. Good. Okay. I have got a couple more things I want to bring up.

The notice ought to refer to your 1542 waiver. I don't think it does. My law clerk says it does not. You should refer to that.

**MR. NELSON:** We will absolutely make that clear in the long form.

**THE COURT:** All right. Now, he says there is something in Section 508 and 501(b), notice requirements to the copyright office and other notices that I haven't been paying any attention to. I want you to look at those and see if our settlement could be upset on an account of failure to comply with 508 and 501(b).

**MR. NELSON:** I do have an answer. I will check 508 but on 501(b), I think the way we have structured this notice program is that every single potential claimant will get notice of this. And so, therefore, it would satisfy Section --

**THE COURT:** But he said you have to give a copy of the complaint.

**MR. NELSON:** Well, it would be online.

**THE COURT:** See, now you are stretching it. Do you have to get a copy of the complaint?

**MR. NELSON:** Well, the language specifically states that it -- the Court may require such written notice. It is not a shall require, and --

**THE COURT:**  Well, then I'm not going to -- if it's only may, I'm --

**MR. NELSON:**  And then there is -- we were actually -- there is a question as you go on, whether the may and the shall -- it says:  May require such owner to serve written notice of the action with a copy of the complaint upon any person shown by the records of the Copyright Office or otherwise, to have a claim or -- to have or claim an interest in the copyright and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in this case.

**THE COURT:**  All right.  Well, you are trying to do that in your program.

**MR. NELSON:**  We are, Your Honor.  And just the second shall clause -- because we were actually looking at this -- a number of times but just recently.  The second shall clause can't overtake the first may clause.  So --

**THE COURT:**  Yes, it could.

**MR. NELSON:**  -- the way we read it.

**THE COURT:**  Yes, it could.  Some judge somewhere else might say it did.  So, let's make sure that our program is going to give notice to all those people.

**MR. NELSON:**  Thank you, Your Honor.

**THE COURT:**  All right.  Okay.  Is there some requirement to give a notice of the works list to the Copyright

Office?  508, take a look at that --

**MR. NELSON:**  If it is, we will take another look.

**THE COURT:**  Look at it and see.  All right.

All right.  The $3,000, my law clerk points out, that we don't have anything in the record that justifies the normal comments by somebody, maybe an expert or just the lawyers.  And so, why $3,000 per work is a fair settlement.

**MR. NELSON:**  I'm happy to --

**THE COURT:**  Go ahead.  I will give you a chance to put something on the record now.

**MR. NELSON:**  Thank you, Your Honor.  And it is also in the long form notice -- I believe it is question 32 -- that Your Honor had a suggestion with a few edits.

**THE COURT:**  Right.

**MR. NELSON:**  That's in the long form notice.  But to be clear, we believe it is a historic settlement that delivers substantial value to all class members.  The range of potential outcomes was zero if we were to lose all the way to $150,000 per work if we were going to win and if Anthropic could pay on all of that.

The statutory damages minimum is $200 a work if there is innocent infringement and $750 a work if there is not innocent infringement.

According to a study that just was released in 2023, the most common verdict for copyright statutory damages was $750 a

work.  We have done this and settled in a way that provides for four times the value of the statutory minimum even assuming no innocent infringement to $3,000 a work.  The case settled.

During the pendency of the 23(f) appeal on a motion to stay by Anthropic, which if the Ninth Circuit had granted it, would have taken the trial date off calendar and would have also caused substantial uncertainty.

In addition, because this is a new area of law that Your Honor has ruled on -- including other district courts including in this courthouse -- there was substantial uncertainty even if we were to get to a trial about what the final legal result would be and even if we were to get a jury verdict -- and I'm hopeful we would have gotten a large jury verdict -- it ultimately would have been up to Your Honor about what the statutory damages would be and what has been subject to remittitur or any other and, of course, subject to appeal from that.

In one recent case where there was a large copyright verdict, in fact, it is still on appeal six years later and is now in the Supreme Court.

So, this provides finality.  It provides certainty.  It provides $3,000 a work.  We believe it is by far in the best interest of all class members to do so and is an historic settlement that will result in the largest copyright recovery of all time.

And even as compared to other statutory damages cases that have settled on a class action basis, the amount as compared to cases such as *Spotify*, such as *Google Books* -- which was, of course, not approved -- but even if you compare it to those, the level -- and as exhibited in Exhibit A to the original motion for approval -- is between 10 -- I believe it is at least ten times as large on a per work basis as compared to those other copyright class action settlements.

All that -- and, of course, as Your Honor just mentioned even at the beginning of this hearing, it was always subject to a risk of decertification at any point and subject to the strict standards of this Court in terms of going forward.

So, for all those reasons, we believe this is a home run settlement for all class members and would urge all class members to approve it.  It has also been substantially vetted by the named class members who are very much in support of it as their declarations state and by a broad cross-section of authors and publishers and stakeholders.

So, in addition, the settlement provides substantial other value in addition to monetary relief.  It provides subject to certain restrictions, the destruction of LibGen and PiLiMi datasets and the certification that the works that were downloaded and copies of those works that were downloaded from LibGen and PiLiMi were not used in any commercial model by Anthropic.  Thank you, Your Honor.

**THE COURT:** Okay. Those are all very good points.

Not that it needs anything further but I would add one more consideration, and that is the -- which doesn't get much attention in this case -- but the scanned books part.

The Court ruled that it was okay for Anthropic to go out, let's say, to a library where they had books on sale for $1 each; pay $1; buy the book, take it apart, scan it and use it. That's fair use.

**MR. NELSON:** Yes, Your Honor --

**THE COURT:** That's $1 or $5 or $10. $3,000 is way more than that. So, that was another additional risk that going forward at least -- now, in this case you had a huge fact in your favor, which was there was downloading, pirate sites. So, that works greatly in your favor. All those considerations that you gave, justify the $3,000 settlement.

**MR. NELSON:** And, Your Honor, if I may, there is one other I did want to --

**THE COURT:** It might be a little more depending on how the extra money goes. Go ahead.

**MR. NELSON:** Well, in fact, it will be at least -- just based upon the number of works, which as of today are 482,460 on the revised list, so even just dividing that because it is less than 500,000, it will be just on a per work basis even assuming that every single work comes in. It will be slightly more than 3,000, forgetting about even the

non-reversionary part.

But there is another important part to this, which is this is a past release only.  It does not affect future conduct whatsoever.  So, if Anthropic were to scan books as of August 26th -- even three weeks ago and has done that -- it is -- no claim with respect to that has been released.  It is only on the works list.  We are not expanding the scope of the release outside of the works on the works list.

**THE COURT:**  That's true.  And if some other judge had that case, that judge might rule that scanning was not right; but in -- on the record I have, I think it was -- that would not be a very strong claim.  Okay.  Nevertheless it is preserved --

**MR. NELSON:**  Thank you, Your Honor.

**THE COURT:**  -- for some other judge some other time.  Okay.  I want to -- there's something about your settlement, I want to -- we have already touched on it, but let's go over it in more detail.

In order to preserve the chance to decertify the class, I have to see how the claims process works.  Not that I think that's going to happen, but I think there is enough of a risk, we have to wait and see.  So, that means nobody can be paid until we go through the claims process.  Am I right about that?

**MS. DURIE:**  Yes.

**MR. NELSON:**  Yes, Your Honor.  And, in fact, in our

proposed schedule no payment will occur -- I believe it is until two months after the final approval hearing where Your Honor will have a full and complete record of the claims that have been --

THE COURT:  And so, we will be 469,000 books and who all present a claim and how they came out, and then I will waive my hand or whoever succeeds me will waive their hand and say approved.

MR. NELSON:  Thank you, Your Honor.  That is how it is envisioned.

THE COURT:  Right, okay.  So, but then -- so, then no disbursements until we see how the claims are going to go.

MS. DURIE:  Correct.

THE COURT:  Also no fees to you.

MR. NELSON:  That's fine, Your Honor.

THE COURT:  Until we see how it goes.

MR. NELSON:  That's right, Your Honor.

THE COURT:  Part of the high roller big risk that you are taking here for which you deserve some credit.  I'm not making fun of you.  I'm saying that you are doing a service.

MR. NELSON:  Thank you, Your Honor.

THE COURT:  All right.  Those are the main points I wanted to ask you about.

I do want to say -- unless you want to talk me out of it -- that this is a fair settlement.  I -- at least it meets

the preliminary approval standard.  And it ordinarily would be a no brainer.  3,000 in my view is a very good settlement for what was done here.  However, it's complicated by the plan of distribution, which necessarily is going to have some complications because it involves -- class members are the legal owners, are the beneficial owners -- but those translate to publishers, authors, maybe some other people out there.  And it needs excellent lawyers -- you and you, excellent lawyers -- to manage this process to a successful end and an ethical end.

I think that will happen.  We have some of the best lawyers in America in this courtroom now.  And if anybody can do it, you can do it.  And I think it will be done but we got to wait and see especially the Plaintiffs' lawyers because you are the one waiting to be paid.  You got to bird dog this at every stage and bring to my attention problems when they arise so that we can get together and see how to solve the problems.

So, I'm approving your plan of distribution.  I'm approving your notice except for those things that I raised today.  I want to make sure you fix those things.  I'm approving the plan of distribution and the overall settlement subject to, of course, the final hearing.  I have to hold a final hearing and maybe somebody will bring up a good point that I have not seen yet.

Okay.  What else do we need to do today?

**MR. NELSON:**  No, Your Honor, thank you.  Thank you for

your comments.

**THE COURT:** I'm not going to reduce to writing -- I don't want you to say later, Oh, he didn't do a written order. No. My verbal here is the written order. So, make sure you take to heart the comments about the notice and so forth, and let's solve those problems. Okay. So, now, what will be the very next step?

**MR. NELSON:** I think, Your Honor, we do have a name for a special master that we will submit for you. It would be unopposed. We will do that as early as tomorrow --

**THE COURT:** Okay.

**MR. NELSON:** -- so that that --

**THE COURT:** Does that person know that you are going to submit --

**MR. NELSON:** Yes, Your Honor.

**THE COURT:** Who is it?

**MR. NELSON:** Her name is Naomi Gray. She is the former president of The Copyright Society and has been approved by both the authors and the publishers as a special master.

**THE COURT:** All right. And you have approved that?

**MS. DURIE:** Yes.

**THE COURT:** Okay. And that person will be paid by you --

**MR. NELSON:** Yes, Your Honor.

**THE COURT:** -- until such time as, if ever, that we

get the final approval.

**MR. NELSON:**  Yes, Your Honor.

**THE COURT:**  Anything else?  When -- give me the date when the notice will go out.  And I want to make it clear, first class mail to every class member with a long-form notice and all those other forms of notice, trade journals and all that.

**MR. NELSON:**  The -- according to the plan of allocation, the -- as of as soon as possible publication notice will start.  The website will go live based upon the works list and the class list that was submitted.  That will happen immediately.

In addition, trade media, internet online and social media will start no later than seven days.  We expect it to start as early as tomorrow or Monday.

In addition, because of this approval today, the key industry groups will -- will distribute it as reflected in the multiple declarations that Your Honor has.  Those will start immediately.  And, of course, we expect that we will be generating press.

Within 45 days of today, the major publishers, we expect will be -- at least the major publishers comprising about half the list -- will give up-to-date information.  We expect that to grow, and then 14 days after that, which would be 59 days from today, notice will go out from there.

THE COURT:  All right.  I -- I think there's been enough notice of -- that I will -- I will just step off the bench by the end of the year.  So, this process will continue. It's not a hundred percent that I will step off the bench, but that was my original plan.  But if I do, we will have to reassign the case to a new judge, but at least we had this plan in place that's now approved; and you can move forward.  And if a new judge comes in, you will have to educate the new judge on what's happened to date.  Okay.  Anything more?

MS. DURIE:  No, Your Honor, thank you.

MR. NELSON:  Your Honor, the only thing I would add is to thank Your Honor and the court staff for the time and attention to this case.  We really appreciate it.

THE COURT:  I have learned a lot.

(Laughter)

MR. NELSON:  Likewise.

THE COURT:  Thank you.

THE CLERK:  Court is adjourned.

(Proceedings adjourned at 1:27 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    September 26, 2025

_Marla Knox_

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter